[No. 1041-2.   Division Two.   March 4, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. EDDIE HALL, *Appellant.*

*Kenneth D. Beyer*, for appellant.

*Ronald L. Hendry, Prosecuting Attorney*, and *Joseph D. Mladinov, Special Counsel*, for respondent.

PEARSON, C.J.—Defendant, Eddie Hall, appeals from a judgment and sentence for robbery following conviction by a Pierce County jury. A single issue is presented: Did the trial court err in refusing the admission of evidence to contradict an accomplice's testimony as to the presence of a third accomplice at the scene of the crime? We find no error.

On the evening of November 9, 1972, two men entered the Woodbrook Food Center in Pierce County. Their furtive actions aroused the suspicion of the proprietress, who summoned her husband by signal from a back room. He surveyed the situation, and returned to the back room to secure a gun.

Meanwhile, the two men approached the checkout counter. After going through the motions of making a purchase, one of them produced what appeared to be a gun and demanded money. The proprietress complied. Her husband then appeared and fired a shot at the gunman, who fled. The accomplice, Joe Nathan Alderson, remained in the store and was apprehended. After making a series of exculpatory statements, Alderson confessed his involvement in the robbery and implicated the defendant as the man who had accompanied him into the store. Alderson stated further that one Cleveland S. Reed had remained outside the store in a car, as a "getaway" man.

At trial, the robbery victim identified the defendant as the perpetrator. Alderson testified that the defendant had instigated and participated in the robbery. Again he asserted the complicity of Cleveland S. Reed. (Reed was charged in the same information as was the defendant;

however, he had evidently left the state, and was unapprehended at the time of trial.)

Alderson was impeached on cross-examination in a number of respects—particularly with reference to the numerous inconsistent statements he made to the police about the circumstances of the robbery and his involvement in it.

During his case in chief the defendant offered certain medical records from Madigan hospital, ostensibly to show that *Reed* had been a patient in its "contagious ward" on the night of the robbery. The obvious purpose of this offer was to contradict Alderson's testimony as to the involvement of a third accomplice, and accordingly to further undermine his credibility. The defendant's sole assignment of error relates to the trial court's rejection of this proposed evidence.

In support of the trial court's ruling, the state urges that the proposed contradiction was upon a collateral matter, properly excludable on that ground alone. It is a well recognized rule that a witness cannot be contradicted or impeached by the use of facts collateral to the issue. The test for determining whether or not a fact is a collateral matter has been set out in a number of cases: " ' "Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?" ' " *State v. Sandros,* 186 Wash. 438, 443, 58 P.2d 362 (1936); *State v. Kritzer,* 21 Wn.2d 710, 152 P.2d 967 (1944); *State v. Gilmore,* 42 Wn.2d 624, 257 P.2d 215 (1953); *State v. Oswalt,* 62 Wn.2d 118, 381 P.2d 617 (1963). *See* 3A J. Wigmore, *Evidence* § 1003 (Chadbourn rev. 1970).

The issue of Reed's presence in the hospital on the night of the robbery would appear to be collateral under this definition. However, there are certain facts which relate directly to a witness' opportunity to observe, or knowledge of facts closely connected with the alleged offense that cannot properly be deemed collateral.

As said by Wigmore with respect to this class of facts:

[A]ll facts which bear upon the position, distance, and surroundings, the bystanders and their conduct, the time

and the place, the things attracting his attention, and similar circumstances, said by the witness to have been observed by him at the time of observing the main event testified to by him, are material to his credit in so far as they purport to have formed a part of the whole scene to his observation; thus, if an error is demonstrated in one of the parts observed, the inference (more or less strong) is that his observation was erroneous (or his narration manufactured) on other and more important parts also.

3A J. Wigmore, *Evidence* § 1005, at 972 (Chadbourn rev. 1970).

Thus a witness may be contradicted in his assertion that an accomplice aided the defendant at the scene of the crime —the testimony relating to the very essence of the transaction itself. *See* 3A J. Wigmore, *Evidence* § 1005 (f) (Chadbourn rev. 1970) and cases cited.[1]

---

[1]Wigmore offers a persuasive example of this type of case:

"Robinson, C.J., in *R. v. Brown*, 21 U.C.Q.B 330, 336 (1861) (indictment for murder; M testified that she saw the defendant and S throw the deceased off a bridge, giving a detailed description of S; the defendant offered a witness D to show that S was 50 miles away at that time; the judge insisted that S himself should be called, and if contradicted, then D; held, that D also should have been called, the point of contradiction being material): It appears to me that any fact so closely connected with the alleged offence as to be in fact a party of what was transacted or said to be transacted at the very moment cannot be treated as irrelevant in investigating the truth of the charge. If, for instance, the witness for the Crown, knowing a particular watch or some remarkable article of dress that the deceased usually wore, had sworn that she saw Brown take the article from his person before throwing him into the river, it would have been a material circumstance to be shown on the part of the prisoner, if it could have been, that the deceased had left the watch or the article of dress at home when he went out that evening, and if they could be produced to the jury on the trial. So if the Crown witness had sworn the offence was committed in some obscure hovel in the woods or in the town, which she pretended to describe with certainty and which she had known well, it could not have been irrelevant to the case to prove that that house or hovel had been totally destroyed by fire some weeks before the time spoken of, so that the murder could not have been committed in it. Yet in all these cases it must be admitted that if the crime of murder were committed by the prisoner, he would not the less be guilty of that crime because the deceased had not been robbed as well as murdered, or because he had not been killed in the place described by the witness; nor would the prisoner be less guilty of murder if he

In our opinion this rule is even more persuasive where the witness himself is an accomplice. His testimony as to the complicity of a third person at the scene of the crime, in addition to the defendant, is so closely connected to the criminal transaction as to be directly relevant to the truth of the charge.

■ While we do not agree that the proposed testimony was *inadmissible* as bearing upon a collateral matter, we are mindful of the rule which leaves to the sound discretion of the trial court the permissible scope of cross-examination tending to impeach a witness. *State v. Goddard,* 56 Wn.2d 33, 351 P.2d 159 (1960); *State v. Jones,* 67 Wn.2d 506, 408 P.2d 247 (1965). A rule of discretion likewise prevails with respect to the scope of testimony in contradiction of a witness. *State v. Hull,* 182 Wash. 681, 48 P.2d 225 (1935).

In light of this rule, we cannot say that the trial court erred in rejecting the testimony. The admission of hospital records tending to show the presence there of a "Cleveland Reed" during the period in question could well have led the jury into a confusing side issue, given the likelihood that the testimony of hospital personnel would be needed to pinpoint Reed's presence at the precise time, and the necessity in establishing the identity of "Reed," the patient, as "Reed," the accomplice. In short, the situation had the potential of degenerating into a trial on the soundness of Reed's alibi.

In finding no abuse of discretion, we deem significant the fact that Alderson's testimony was not the sole basis of the state's case, but that the victim positively identified the defendant. *See State v. Krausse,* 10 Wn. App. 574, 519 P.2d 266 (1974).

Judgment affirmed.

PETRIE and ARMSTRONG, JJ., concur.

Petition for rehearing denied May 8, 1974.

Review denied by Supreme Court July 29, 1974.

committed the deed alone, or without being assisted by Sherrick as the witness described." 3A J. Wigmore, *Evidence* § 1005(f), at 973 (Chadbourn rev. 1970).