FILED
COURT OF APPEALS
DIVISION II

2013 JUN 25 AM 9:43

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42414-2-II |
| Respondent, | |
| v. | |
| WAYNE ALAN BURTON, | Consolidated with |
| Appellant. | |
| In the Matter Of THE PERSONAL RESTRAINT PETITION OF: | No. 44090-3-II |
| WAYNE ALAN BURTON, | UNPUBLISHED OPINION |
| Petitioner. | |

WORSWICK, C.J. — A jury convicted Wayne Burton of two counts of first degree incest and one count of second degree incest with aggravators for domestic violence, an ongoing pattern of abuse, and abuse of a position of trust. Burton appeals, arguing (1) trial counsel rendered ineffective assistance for failing to object to evidence that marijuana pipes were found in his house, (2) the trial court erred by admitting DNA evidence under ER 404(b) to show Burton's lustful disposition towards the victim, (3) there was insufficient evidence to support the convictions, (4) the trial court erred by imposing an exceptional sentence without written findings and conclusions, and (5) the exceptional sentence was clearly excessive. Burton raises numerous additional arguments in a statement of additional grounds (SAG). In a personal

restraint petition,[1] Burton challenges a sentencing condition that has the effect of barring him from having contact with his wife. We grant Burton's latter request and remand with instruction to strike this condition. Otherwise, we affirm.

## FACTS

In 2010, Burton's stepdaughter MBOW alleged that Burton had sexually abused her beginning when she was 15 or 16. MBOW was 18 years old when she made the allegations.

Police executed a search warrant on Burton's home. During the search, the police seized four bathrobes. DNA (deoxyribonucleic acid) analysis revealed a mix of Burton and MBOW's DNA on one of the robes. The police also seized marijuana pipes from Burton's bedroom.

The State charged Burton by amended information with two counts of first degree incest and one count of second degree incest.[2] The State alleged domestic violence, an ongoing pattern of abuse, and abuse of a position of trust as aggravating sentencing factors on each count.

Pretrial, the State made a motion in limine to admit under ER 404(b) the DNA evidence found on the bathrobe. Defense counsel conceded that the evidence properly showed Burton's lustful disposition towards MBOW. But defense counsel argued that the DNA evidence showed sexual intercourse after MBOW turned 18, which was not a crime because she was Burton's stepdaughter. Defense counsel argued that this evidence was more prejudicial than probative.

---

[1] After filing his appeal, Burton moved to modify his judgment and sentence. This motion was transferred to this court for consideration as a personal restraint petition. We exercise our discretion and consolidate the two cases. RAP 3.3(b).

[2] The original information is not part of the record on appeal.

2

The trial court ruled that the evidence was admissible under ER 404(b) and the DNA evidence was admitted at trial.

At trial, a forensic scientist testified that the robe had not been washed after the DNA was deposited, but could give no opinion as to how old the DNA was. Thus, it was not established at trial whether the DNA had been deposited before or after MBOW's 18th birthday. The State's expert further testified that, due to the amount of DNA found on the robe, the DNA had come from biological fluids and not skin contact. Defense did not request any limiting instruction regarding the DNA evidence.

MBOW testified to several specific incidents of sexual abuse. She testified about one incident when she masturbated Burton on the couch, and her mother, Karen Burton,[3] walked in, caught them, and kicked Burton out of the house for several days. In another incident, Burton tied MBOW's hands above her head using tape and had sexual intercourse with her. And in a third incident, Burton tied her arms and legs to the bed using nylon and had sexual intercourse with her. All of these incidents occurred before MBOW was 18. MBOW also testified that she had sexual intercourse with Burton after she turned 18, on the night before she reported the prior sexual abuse.

Detective Lori Blankenship, who executed the search warrant, briefly testified that she collected what she believed to be some marijuana pipes during the search. Detective Elizabeth Gundrum, who assisted Detective Blankenship, also testified about the marijuana pipes: "[W]e took two marijuana smoking pipes." 2 Report of Proceedings (RP) at 157. Burton did not object to this testimony. The pipes themselves were not admitted.

---

[3] Later, we refer to Karen Burton by her first name for clarity, intending no disrespect.

3

Burton testified on his own behalf. Burton unequivocally denied having any sexual contact or sexual intercourse with MBOW. Burton claimed that MBOW had been the only perpetrator of any sexual misconduct, including "flashing" him, making sexual propositions to him, and sending online messages to others regarding "bondage and other sexual activities." 3 RP at 292-93, 299.

The jury found Burton guilty as charged and returned "yes" verdicts on each aggravating factor. The trial judge gave Burton an exceptional sentence of 240 months confinement.[4]

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Burton first contends that trial counsel rendered ineffective assistance by failing to object to testimony regarding the marijuana pipes found in Burton's house during execution of the search warrant. He also argues that counsel was ineffective by failing to request an ER 404(b) limiting instruction regarding this evidence. We disagree.

To show ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To show deficient performance, Burton must show that defense counsel's performance fell below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. To show prejudice, Burton must show a reasonable possibility that, but for counsel's purportedly deficient conduct, the outcome of the proceeding would have differed. *Reichenbach*, 153 Wn.2d at 130. Because both prongs must be

---

[4] The standard range for the first degree incest charges was 46-61 months, and the standard range for the second degree incest charge was 41-54 months. The trial court issued no written findings of fact or conclusions of law regarding the exceptional sentence.

4

met, a failure to show either prong will end the inquiry. *State v. Fredrick*, 45 Wn. App. 916, 923, 729 P.2d 56 (1986). There is no ineffectiveness if a challenge would have failed. *State v. Nichols*, 161 Wn.2d 1, 14-15, 162 P.3d 1122 (2007).

"The threshold for the deficient performance prong is high, given the deference afforded to [the] decisions of defense counsel in the course of representation." *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To prevail on an ineffective assistance claim, a defendant must overcome a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. A defendant can rebut the presumption of reasonable performance by showing that there is no conceivable legitimate tactic explaining counsel's performance. *Grier*, 171 Wn.2d at 33.

"The decision of when or whether to object is a classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Madison*, 53 Wn. App. at 763. Although irrelevant, the brief testimony regarding the marijuana pipes here was not central to the State's case. It was a legitimate trial strategy for counsel to keep silent to avoid highlighting this brief, irrelevant testimony to the jury. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). Burton has not overcome the presumption against deficient performance. His claim on this point fails.

Regarding defense counsel's failure to request an ER 404(b) limiting instruction regarding the evidence of the marijuana pipes, the decision not to request a limiting instruction may have been a legitimate tactical choice to avoid reemphasizing the evidence. *State v. Yarbrough*, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009). Burton has not overcome the

presumption that counsel's performance was reasonable in failing to request a limiting instruction. His claim on this point fails as well.

## II. ER 404(b)

Burton next argues that the trial court erred by admitting the DNA evidence found on his bathrobe under ER 404(b). We disagree.

We review a trial court's rulings under ER 404(b) for abuse of discretion. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). ER 404(b) forbids a trial court to admit evidence of a person's other crimes, wrongs, or acts to prove a person's character to show that the person acted in conformity therewith. But ER 404(b) does not forbid such "other acts" evidence admitted for other purposes, such as to show a lustful disposition towards the victim in a sexual assault case. *State v. Ray*, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991). To admit ER 404(b) evidence, a trial court "'must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.'" *Foxhoven*, 161 Wn.2d at 175 (quoting *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

The trial court ruled that the DNA evidence on Burton's robe was admissible to show Burton's lustful disposition towards MBOW. The robe contained a mixed DNA profile that matched Burton and MBOW. Burton's profile was derived from semen found on the robe. The level of MBOW's DNA was high and consistent with being from biological fluid. A forensic scientist testified that the most likely way the two profiles became intermingled was through

sexual intercourse. The robe had not been washed since the DNA was deposited, but it was unknown when the DNA was left on the robe.

Burton argues that this evidence was irrelevant to the charged crimes and that the potential for prejudice was substantial. We disagree. The evidence tended to show that Burton and MBOW had sexual intercourse. This was highly probative and revealed more than just Burton's general sexual proclivities. Burton asserts that the evidence of sexual contact occurred after the charged offenses, and implies such contact would be irrelevant. But even assuming that the DNA was deposited after MBOW was 18, evidence of sexual contact between Burton and MBOW would still be highly relevant because it corroborated MBOW's testimony of a longstanding sexual relationship with Burton. Burton does not explain how this evidence was unfairly prejudicial. We conclude that the trial court did not abuse its discretion in admitting the evidence.

### III. SUFFICIENCY OF EVIDENCE

Burton next argues that the evidence was insufficient to support his convictions. We disagree.

In evaluating the sufficiency of the evidence, we review the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the State. *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010). We ask whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Drum*, 168 Wn.2d at 34-35. Circumstantial and direct evidence are equally reliable, and we defer to the trier of fact on conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

There was sufficient evidence for a reasonable jury to convict Burton of first and second degree incest.[5] MBOW testified to two separate incidents of sexual intercourse before she turned 18: when Burton tied her hands with tape, and when he tied her to the bed with nylon. MBOW also testified about a specific incident of sexual contact, on the couch, which the State relied on to support the second degree incest charge. MBOW testified that, during that incident, she masturbated Burton. MBOW's testimony was corroborated by DNA evidence, which showed sexual intercourse between MBOW and Burton, although it could not pinpoint when. Taking the evidence in the light most favorable to the State, the evidence was sufficient to convict Burton as charged.

Burton points out that the case against him turned on MBOW's credibility, and that there was conflicting evidence regarding Burton's guilt. But we defer to the jury on conflicting testimony and witness credibility. *Thomas*, 150 Wn.2d at 874-75. The fact that this case turns on disputed testimony and witness credibility does not show that the evidence was insufficient; it shows that Burton's guilt was a factual question for the jury rather than a legal question for us. Burton's argument on this point fails.

---

[5] "A person is guilty of incest in the first degree if he or she engages in sexual intercourse with a person whom he or she knows to be related to him or her . . . ." RCW 9A.64.020(1)(a). "Sexual intercourse" includes "any penetration, however slight," as well as oral sex. RCW 9A.44.010(1); RCW 9A.64.020(1)(c). "A person is guilty of incest in the second degree if he or she engages in sexual contact with a person whom he or she knows to be related to him or her." RCW 9A.64.020(2)(a). "Sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire." RCW 9A.44.010(2); RCW 9A.64.020(3)(c). Sexual intercourse and sexual contact between stepparents and stepchildren is punishable as incest if the stepchild is under 18 years old. RCW 9A.64.020.

IV. SENTENCING

Burton next challenges his exceptional sentence. He first argues that the trial court's error by failing to enter written findings of fact and conclusions of law regarding his exceptional sentence requires remand for resentencing. And he further argues that his sentence was clearly excessive. We disagree on both points.[6]

A.    *Failure To Enter Findings and Conclusions Was Harmless*

Burton argues that the trial court erred by failing to enter findings of fact and conclusions of law supporting his exceptional sentence, which requires remand for resentencing. We hold that, while the trial court erred by failing to enter written findings and conclusions, the error was harmless and remand is not required.

Under RCW 9.94A.535, a trial court may impose an exceptional sentence above the standard sentencing range based on aggravating circumstances found in accordance with RCW 9.94A.537. A trial court "shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535. But when a trial court's oral ruling is sufficiently comprehensive and clear that written facts would be a mere formality, the failure to enter written findings and conclusions is harmless. *State v. Bluehorse*, 159 Wn. App. 410, 423, 248 P.3d 537 (2011). Such is the case here.

---

[6] Burton also argues in passing, without citation to authority, that his sentence violated his constitutional right to be free from cruel and unusual punishment. But we do not entertain "'naked castings into the constitutional sea.'" *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (quoting *In re Request of Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)). We do not address this issue.

The jury found three aggravating factors on each count, which Burton does not challenge on appeal. And the record shows that the trial court relied on the jury's findings of a pattern of abuse to impose the exceptional sentence. The trial court stated at sentencing,

> We heard the testimony of your step-daughter, and we can see her lack of confidence, her demeanor in court. I believe that you have greatly affected your daughter—your step-daughter forever. She was a young teenager, and this activity went on for a long time. *And, in fact, it was evidenced by the special verdict form as the jurors determined that the crimes were part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years manifested by multiple incidents over a prolonged period of time.* That is what the jury found.

RP (July 22, 2011) at 13-14 (emphasis added). Based on this part of the court's oral ruling, it is sufficiently clear that the trial court imposed the exceptional sentence because the jury found an ongoing pattern of sexual abuse. A trial court need not make additional findings beyond a jury's finding of aggravating circumstances to impose an exceptional sentence. *State v. Williams*, 159 Wn. App. 298, 317-18, 244 P.3d 1018 , *review denied*, 171 Wn.2d 1025 (2011). The trial court's oral ruling at sentencing is sufficiently comprehensive and clear that remand for written findings and conclusions would be a mere formality. The failure to enter written findings and conclusions was harmless and Burton's claim on this point fails.

B.    *Sentence Was Not Clearly Excessive*

Burton finally argues that his exceptional sentence of 240 months was clearly excessive. We disagree.

Under RCW 9.94A.585(4)(b), we may reverse an exceptional sentence if it is clearly excessive. We review whether an exceptional sentence is clearly excessive for abuse of discretion. *State v. Knutz*, 161 Wn. App. 395, 410, 253 P.3d 437 (2011). When an exceptional

10

sentence is based on proper reasons, we will hold it clearly excessive only "if its length, in light of the record, 'shocks the conscience.'" *Knutz*, 161 Wn. App. at 410-11 (internal quotation marks omitted) (quoting *State v. Kolesnik*, 146 Wn. App. 790, 805, 192 P.3d 937 (2008)). A sentence shocks the conscience if it is one that "'no reasonable person would adopt.'" *Knutz*, 161 Wn. App. at 411 (quoting *State v. Halsey*, 140 Wn. App. 313, 324-25, 165 P.3d 409 (2007)).

Burton makes no legally cognizable argument that his sentence was clearly excessive. Instead, he claims that because he disputed his guilt and there was conflicting testimony at trial, the sentence is clearly excessive. This argument disregards the applicable standard of review and is without merit.

## PERSONAL RESTRAINT PETITION

In his timely personal restraint petition, Burton challenges a no-contact order in his judgment and sentencing, stating that it improperly prevents contact between him and his wife through a provision forbidding him from having contact with the victim's family:

> Have no direct or indirect contact with the victim(s) *or his or her family*, including by telephone, computer, letter, in person, or via third party.

Judgment and Sentence at 6 (emphasis added).

Because his victim was his stepdaughter and not his wife, the State concedes that prohibiting contact with his wife is not crime related and interferes with his constitutional right to marry. RCW 9.94A.505(8); *see Zablocki v. Redhail*, 434 U.S. 374, 388, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978). And, because the victim is now over 21 years old, the State concedes that the words "or his or her family" should be stricken from his sentencing condition.

11

No. 42414-2-II;
Consolidated with No. 44090-3-II

We accept the State's concession and remand with instruction to strike the words "or his

or her family" from the judgment and sentence.

## STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Burton advances a number of arguments that fall into five categories: (1)

ineffective assistance of counsel, (2) public trial violations, (3) prosecutorial misconduct, (4)

incomplete transcription of the proceedings, (5) cumulative error, and (6) ineffective assistance

of appellate counsel.[7] We find no basis warranting relief.

A.      *Burton Has Not Shown Ineffective Assistance of Counsel*

Burton argues that trial counsel rendered ineffective assistance[8] on the numerous grounds

set forth below. We disagree on all points.

1. *Failure To Object to Amended Information*

Burton argues that trial counsel was ineffective for failing to object to the amended

information charging him with two counts of first degree incest and alleging aggravating

circumstances. We do not see any merit to this claim. Under CrR 2.1(d), the trial court may

permit the amendment of an information at any time before the verdict "if substantial rights of

the defendant are not prejudiced." The record does not contain the original information, nor does

the record suggest how Burton's rights could have been prejudiced by the amended information.

---

[7] Burton attempts to supplement the record by attaching to his SAG a written statement by
Karen, as well as several documents that do not appear to have been admitted at trial. We do not
consider evidence outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335,
899 P.2d 1251 (1995). The appropriate means to raise facts outside the existing trial record is a
personal restraint petition. *McFarland*, 127 Wn.2d at 335.

[8] Burton also calls ineffective assistance of counsel "constructive denial of counsel." SAG at 11.

12

Because it pertains to matters outside the record, we do not address this issue. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

### 2. *Failure To Request Continuances*

Burton argues that trial counsel was ineffective for failing to request a continuance (1) to prepare a defense to the amended information, and (2) in response to a "surprise" State witness. SAG at 3-4, 13.

Burton has not met his burden to show that he was prejudiced by the amended information. Nor has he shown deficient performance as nothing in the record suggests that counsel needed additional time to investigate with regard to the amended information. Burton has not shown ineffective assistance of counsel on this point.

As to the "surprise" witnesses, before the State called Beverly Spaulding, defense counsel requested a recess to interview Spaulding before she testified, which the trial court granted. The record does not reflect when Spaulding was disclosed to Burton's counsel. Spaulding testified that Karen had told her about the incident where Karen caught MBOW and Burton on the couch. Defense counsel did not object to Spaulding testifying but, instead, called an additional witness, who gave testimony that impeached Spaulding as to the incident's timing. The record shows that Burton's counsel called a witness not on his original witness list in response to the state calling Spaulding. The record does not reflect that counsel needed additional time to prepare a response to Spaulding's testimony, or that Spaulding's testimony represented any kind of unfair surprise. Burton has not overcome the strong presumption that counsel's performance was reasonable on this point.

3. *Failure To Object to Suppression of Prior Statements*

Burton argues that trial counsel was ineffective for failing to "object to suppression of prior statements of witnesses." SAG at 4. Although Burton is not required to cite authority or the record in his SAG, he must inform us of the nature and occurrence of any error. RAP 10.10(c). He has not done so with regard to this argument and we do not consider it.

4. *Failure To Object to Court Closure During Voir Dire*

Burton argues that trial counsel was ineffective for failing to object to closing the courtroom to question individual jurors in voir dire. Voir dire was not transcribed in the verbatim reports of proceeding before us. As such, any closure that occurred during voir dire is outside the record on appeal. Because we do not review matters outside the record on direct appeal, we do not consider Burton's claim that counsel was ineffective for failing to object to a closure during voir dire. *McFarland*, 127 Wn.2d at 335.

5. *Failure To Impeach State's Witnesses*

Burton argues that trial counsel was ineffective for failing to impeach the State's witnesses "with their prior inconsistent statements on key elements of their testimony." SAG at 4, 12. Our review of the record does not reveal inconsistent statements that trial counsel failed to use to impeach the State's witnesses. Counsel impeached the State's witnesses on a number of points. Burton fails to apprise the court of the nature and occurrence of any error on this point and we do not consider it.

6. *Failure To Object to Prosecutor's Improper Statements*

Burton argues that trial counsel was ineffective for failing to object to the prosecutor's improper remarks during closing argument and closing argument rebuttal. But as we explain

14

below, the prosecutor did not commit any such misconduct. Burton can show neither deficient performance nor prejudice based on counsel's failure to object to these statements.

7. *Misstating Facts in Closing Argument*

Burton argues that his trial counsel misstated facts during closing argument. The record does not support this claim.

To support this argument, Burton cites a page of closing argument where counsel discussed the incident when Karen caught MBOW and Burton on the couch, saying that the incident "concerned [Karen] greatly," and that Karen kicked Burton out of the house. 3 RP at 365. Burton says Karen's testimony shows this is inaccurate, but Burton's own testimony was that Karen reacted by saying, "Oh, hell no," suggesting that she was in fact concerned by the incident. 3 RP at 292. Defense counsel made no misstatement on this point. And to the extent counsel's argument could be characterized as a misstatement of the evidence, Burton cannot show prejudice based on such a slight inaccuracy.

8. *Failure To Object to ER 404(b) Evidence*

Burton argues that counsel was ineffective for failing to object to the jail phone recordings and the photograph of sex toys and condoms admitted under ER 404(b). We disagree.

At trial, the parties stipulated to admitting redacted jail phone recordings of Burton discussing the charges against him with Karen. The admitted recordings showed Burton and Karen discussing the charges, including reasons Burton could not have committed the alleged crimes and speculation that MBOW might have attempted to use Burton's DNA to create a false

15

positive on her sexual assault exam. In one of the recordings, Karen stated that she planned to change the locks on her house so MBOW would not have free access.

The phone calls between Burton and Karen showed Burton attempting to formulate defenses with Karen, such as that MBOW may have obtained some of Burton's genetic material to create a false positive on her sexual assault examination, or that Burton could not have committed the alleged acts because of sexual difficulties he had. This arguably showed consciousness of guilt, an admissible purpose under ER 404(b). 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE §§ 402.4, 404.29 (5th ed. 2007). Burton's claim on this point fails.

The State also admitted a photograph the police had taken during execution of the search warrant. The police had photographed the contents of a nightstand in Burton's bedroom, which included sex toys and condoms.

The sex toys and condoms evidence were probative of the crimes charged and corroborated testimony. MBOW testified that Burton used one of Karen's sex toys on her. The photograph supported MBOW's testimony because it proved that Karen possessed sex toys. MBOW also testified that Burton "had a tendency not to use a condom" with her, permitting the inference that Burton used a condom at least some of the time. 2 RP at 110. Evidence that there were condoms in Burton's bedroom supports such an inference. Burton cannot show that any objection would have been successful, thus he cannot show defective performance. Burton's claim on this point fails as well.

16

9. *Failure To Object to Impeachment on Collateral Matters*

Burton argues that counsel was ineffective for failing to object when the State impeached Karen on collateral matters regarding her past statements. We disagree.

Extrinsic evidence on a collateral matter is not admissible to impeach a witness. *State v. Lubers*, 81 Wn. App. 614, 623, 915 P.2d 1157 (1996). Evidence is not collateral if it is independently admissible for another purpose. *State v. Fankhouser*, 133 Wn. App. 689, 693, 138 P.3d 140 (2006). Even where collateral evidence is improperly admitted, the error is only prejudicial if it affects or presumptively affects the final results of a trial. *State v. Allen*, 50 Wn. App. 412, 423, 749 P.2d 702 (1988).

Karen testified that she never said she would change the locks on the house. Karen also testified that she never said she cut off MBOW's lunch money, that she never said she put MBOW's belongings outside "in the mold," and that she never said she would use the child support money she received for MBOW to pay for jail phone calls to Burton. 3 RP at 238-39. The state then recalled Detective Blankenship, who testified that, based on jail phone recordings that had not been admitted, Karen had made contradictory statements regarding lunch money, MBOW's belongings, and child support.

The admission of the rebuttal testimony, even if collateral, did not affect the verdict, and Burton cannot show prejudice from his counsel's failure to object. Karen's credibility was otherwise undermined through other testimony. For example, in contrast to Karen' testimony, a co-worker of Karen's testified that Karen told her she had caught Burton and MBOW on the couch and indicated that it was sexual. Moreover, Karen's credibility was not the central issue of

17

the case. The case turned largely on MBOW's credibility and Burton's credibility. Burton's claim on this point fails.

10. *Failure To Object to DNA Evidence on Bathrobe*

Burton argues that trial counsel was ineffective for failing to object to the photocopy of his robe or the related DNA evidence against him and for failing to move for a mistrial based on that evidence. We disagree.

At trial, the State admitted a photocopy of a picture of the robe on which the State's expert had found Burton and MBOW's DNA. Burton claimed the photocopy did not appear to show one of his robes because it looked gray, while his robes were all dark blue. But this does not establish that the photograph or the robe were inadmissible. Under ER 901(a), "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Under ER 901(b)(1), evidence may be identified by a witness with knowledge that the item is "what it is claimed to be." The State laid the foundation for admitting the photocopy. The State's expert, who had knowledge of the robe that she analyzed, testified that the photocopy was an accurate depiction of the robe where she found the DNA. There were no grounds for trial counsel to object to the photocopy. Counsel was not ineffective for failing to object or move for a mistrial and Burton's claim on this point fails.

11. *Failure To Respond to Prosecutor's Objection*

Burton argues that trial counsel was ineffective for failing to give a "meaningful response" when the prosecutor objected to Burton testifying about "what [MBOW's] father had been doing to her." SAG at 14; 3 RP 320. We disagree.

During Burton's testimony, he stated that he believed MBOW's accusations against him were due to transference "from what her father had been doing to her." 3 RP at 320. The State objected and defense counsel offered no response. The trial court sustained the objection.

Although there was no evidence or offer of proof on the issue, it appears that Burton was trying to testify about some alleged sexual misconduct by MBOW's father against her. The trial court had earlier granted the State's motion in limine to exclude any reference to MBOW's sexual history, except for certain limited information that was relevant to her sexual history (or lack thereof) with Burton. Trial counsel was not ineffective for abiding by this motion in limine and not offering any response to the State's objection.

12. *Failure To Object to Prosecutor's Leading Questions*

Burton argues that trial counsel was ineffective for failing to object to the prosecutor asking leading questions on direct examination. We disagree.

Leading questions are ones that suggest the answer; a question that can be freely answered in the affirmative or negative is generally not a leading question. *State v. Scott*, 20 Wn.2d 696, 698-99, 149 P.2d 152 (1944). Under ER 611(c), "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." "The trial court has broad discretion to permit leading questions and will not be reversed absent abuse of that discretion." *Stevens v. Gordon*, 118 Wn. App. 43, 55-56, 74 P.3d 653 (2003). Moreover, the asking of leading questions is not usually a reversible error. *Stevens*, 118 Wn. App. at 56.

Our review of the record revealed only two leading questions on direct examination. The prosecutor asked one witness a leading question suggesting that the witness spoke to a police

19

officer about MBOW's report of sexual abuse. The prosecutor also asked Karen a leading question on direct examination suggesting that a detective questioned her about the time she kicked Burton out of the house.

It was within the trial court's discretion to permit such questions on these relatively minor details of the witnesses' testimony. *Stevens*, 118 Wn. App. at 56. Burton cannot show prejudice based on counsel's failure to object to these innocuous leading questions. His claim on this point fails.

**B.** *Burton Has Not Shown Public Trial Violations*

Burton argues that the trial court violated his right to a public trial by (1) excluding Karen from the courtroom, (2) giving sealed questionnaires to the jury, (3) questioning jurors individually in a closed courtroom, and (4) failing to consider alternatives to closure. Burton does not show any public trial violations.

1. *Exclusion of Witnesses*

Burton argues that the trial court violated his right to a public trial by excluding Karen from the courtroom. This argument is without merit.

The State made a motion in limine to exclude witnesses from the courtroom, which the trial court granted, without objection by Burton's counsel. A trial court has discretion to exclude witnesses from the courtroom so they cannot hear the testimony of other witnesses. ER 615; *Egede-Nissen v. Crystal Mountain, Inc.*, 93 Wn.2d 127, 138, 606 P.2d 1214 (1980). Excluding Karen, a witness, did not violate Burton's right to a public trial. Morever, Burton himself moved to exclude both State and defense witnesses until they testified. Any error on this matter would have fallen under the invited error doctrine and is barred. *State v. Schaler*, 169 Wn.2d 274, 302,

20

No. 42414-2-II;
Consolidated with No. 44090-3-II

236 P.3d 858, 872 (2010) ("Under the doctrine of invited error, a party cannot set up an error and then complain about it on appeal."). This argument fails.

### 2. *Closure During Voir Dire*

Burton argues that the trial court violated his right to a public trial by giving the jury sealed questionnaires, by closing the courtroom to question individual jurors, and by failing to consider alternatives to closure. These arguments rely on matters outside the record and we do not consider them. *McFarland*, 127 Wn.2d at 335.

### C.  *Burton Has Not Shown Prosecutorial Misconduct*

Burton argues that the prosecutor committed misconduct by (1) asking leading questions, (2) arguing facts not in evidence, (3) vouching for MBOW's credibility, and (4) giving her opinion of witness credibility. We disagree.

To establish prosecutorial misconduct, the defendant first bears the burden to establish that a prosecutor's conduct was improper. *State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012). The defendant must then show that the improper comments resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 759-61.

In addition, when the defendant failed to object to the comments at trial, the defendant must show that the comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remarks. *Emery*, 174 Wn.2d at 761-62.

21

1. *Leading Questions*

Burton argues that the prosecutor committed misconduct by asking leading questions on direct examination. We disagree.

As we discussed above, the prosecutor asked two leading questions during direct examinations. Burton suffered no prejudice as a result of the prosecutor's use of leading questions on these minor, undisputed points, and his argument fails.

2. *Arguing Facts Not in Evidence*

Burton argues that the prosecutor impermissibly relied on facts outside the evidence during closing argument by (1) misrepresenting Burton's testimony, (2) misrepresenting Karen's testimony, (3) misrepresenting Johnson's testimony, (4) "testifying" about the contents of "garbled" recordings, and (5) misrepresenting the contents of "behavior modification contracts" between MBOW, Karen, and Burton. SAG at 4, 9-10. We disagree.

The State has wide latitude to argue inferences from the evidence. *State v. Gregory*, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006). But a prosecutor commits reversible misconduct by urging the jury to decide a case based on matters outside the evidence. *See State v. Claflin*, 38 Wn. App. 847, 850-51, 690 P.2d 1186 (1984).

a. *Argument Regarding Burton's Testimony*

Burton claims that the prosecutor relied on matters outside the evidence by claiming that Burton admitted to having sex with MBOW on the night before she reported the abuse. We disagree.

The prosecutor argued, "And the defendant admits, the night before she reported this, he did spend two hours in the house alone with her, and that night they had sex." 3 RP at 340.

22

Burton admitted during his testimony that he spent two hours alone with MBOW, but he claimed he was asleep. He did not admit to having sex with MBOW. But it appears from the record that the prosecutor was pointing out that Burton admitted to spending two hours alone with MBOW that night, and that the prosecutor was arguing that the two had sex, not claiming that Burton admitted to it. This was a permissible inference from the evidence; the potentially confusing phrasing of the prosecutor's argument was not improper.

Even assuming the jury took the prosecutor's argument as claiming that Burton admitted to having sexual intercourse with MBOW, any prejudice from such an argument would have been slight. The jury heard Burton's testimony, during which he unequivocally denied any sexual activity with MBOW.

b. *Argument Regarding Karen's Testimony*

Burton further claims that the prosecutor relied on facts outside the evidence by claiming that Karen testified that MBOW may have worn the bathrobe with her and Burton's DNA on it only "on one occasion." SAG at 9. We disagree.

The prosecutor, in discussing how much DNA was found on the bathrobe, argued,

> We're not talking about [MBOW] may have worn the bathrobe on one occasion, which only came from Karen Burton. Wayne Burton testified that he had never seen her wear that bathrobe. We are talking about a stain that's right on the same place as the defendant's semen, and we're talking about a stain, we're talking about a bodily fluid.

3 RP at 346. Karen testified that she saw MBOW wearing Burton's robes "frequently," but she also testified that MBOW wore the robes when Karen was not home. 3 RP at 274-75. Karen mentioned only one specific incident of her actually seeing MBOW wearing one of Burton's robes. When arguing that Karen testified about only "one occasion," the prosecutor was arguing

that only Karen had testified that MBOW had worn Burton's robe. This was not a misrepresentation of the record, and is not improper.

Even assuming that the jury took the prosecutor to be claiming that Karen had testified that MBOW wore Burton's robe only once, any prejudice would have been slight. The prosecutor's larger point, supported by the evidence, was that MBOW's DNA got on the robe through bodily fluids, not skin contact from wearing the robe, irrespective of how many times MBOW might have worn it. Burton has not shown misconduct on this point.

c. *Argument Regarding Johnson's Testimony*

Burton additionally claims that the prosecutor relied on facts outside the record by mischaracterizing Johnson's testimony. We disagree.

Karen testified that, during the period when the abuse allegedly began, Burton lived in Lynnwood, while Karen and MBOW lived in Kingston. Karen testified that Burton visited her and MBOW in Kingston infrequently. Burton bolstered this testimony with the testimony of Jan Johnson, who lived with Burton in Lynnwood. Johnson testified that Burton did not travel back and forth to Kingston on the weekends.

The prosecutor argued, "[Johnson's] testimony wasn't very helpful to us, either. She couldn't really tell us where the defendant was on the weekends. . . . She said that she thought that he didn't go home because he financially couldn't afford it, but she didn't say she saw him there on the weekends." 3 RP at 352.

The prosecutor did not misstate the record. While Johnson claimed that Burton did not go back and forth to Kingston, the prosecutor argued the reasonable inference that Johnson was mistaken. Johnson did not testify that she had personal knowledge of where Burton actually

24

went on the weekends, and thus she may have been incorrect whether he went back and forth to Kingston. Burton has shown no misconduct on this point.

d. *"Testifying" as to Contents of Jail Phone Recordings*

Burton next argues that the prosecutor committed misconduct by "testifying" about the jail phone recordings contents after first calling them "garbled." SAG at 9-10. We disagree.

Regarding the jail recordings, the prosecutor argued, "I know they are garbled and they are hard to get the first time, but you will be able to take that back with you." 3 RP at 374. The prosecutor then argued that the recordings would show that Burton knew that MBOW had had a sexual assault examination, and was attempting to formulate an innocent explanation why his semen might be found inside MBOW. This argument was within the prosecutor's wide latitude to argue inferences from the evidence. Burton apparently argues that, by calling the calls "garbled," the prosecutor was somehow barred from arguing reasonable inferences to the jury about what the calls showed. Burton is incorrect and has failed to show misconduct on this point.

e. *Misstating Contents of Behavior Modification Contracts*

Burton further argues that the prosecutor misstated the contents of "behavior modification contracts" between MBOW, Karen, and Burton. SAG at 10. We disagree.

Before MBOW made the 2010 allegations that led to the charges at issue, she had accused Burton of sexual abuse, but had recanted. Later, MBOW signed a series of documents known as "behavior modification contracts." 2 RP at 115-16. One of the contracts stated that a sexual relationship MBOW was having with a younger boy was illegal. Another stated that MBOW had made false allegations of abuse against Burton. Karen testified that the documents

had nothing to do with MBOW making allegations against Burton, but were only about MBOW "acting appropriately." 3 RP at 281.

Burton claims that the prosecutor misrepresented the behavior modification contracts by claiming that neither Burton nor Karen had signed them. The prosecutor made no such argument. Rather, the prosecutor questioned Karen's credibility by contrasting the contracts' contents with how Karen described their purpose.

> [T]hese don't appear to be the same contracts that Karen Burton herself signed . . . and when she described what the purpose of those behavior modification contracts were, they weren't anything like what we have here in Exhibit No. 20. What we have here in Exhibit No. 20 is the defendant attempting to hold something over.[MBOW's] head . . . .

3 RP at 349. The prosecutor never claimed that Burton or Karen failed to sign the contracts. The prosecutor argued only that Karen was dishonest when describing the contracts' purpose because their contents contrasted with the purpose that Karen attributed to them. Burton has failed to show misconduct on this point.

### 3. *Vouching*

Burton argues that the prosecutor committed misconduct by vouching for MBOW during closing arguments. We disagree.

A prosecutor commits improper vouching by expressing a personal opinion as to a witness's veracity. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). But a prosecutor's wide latitude to argue inferences from the evidence includes arguing inferences regarding witness credibility. *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). Improper vouching will not be found prejudicial on appeal unless it is clear and unmistakable that the prosecutor is expressing a personal opinion. *Warren*, 165 Wn.2d at 30.

Burton cites a number of instances in the record where the prosecutor argued that MBOW was a credible witness. But each instance shows the prosecutor arguing reasonable inferences from the evidence regarding MBOW's credibility. The prosecutor did not give her personal opinion that MBOW was credible. Burton appears to base his argument on the idea that any mention of witness credibility by the prosecutor is improper vouching, but that is incorrect. Burton has not shown misconduct on this point.

4. *Giving Personal Opinion*

Burton additionally argues that the prosecutor improperly gave her personal opinion during closing argument. We disagree.

Prosecutors may not give their personal opinions regarding the defendant's guilt or a witness's credibility. *Warren*, 165 Wn.2d at 30. But, again, courts will not find prejudicial error absent a clear and unmistakable expression of personal opinion. *Warren*, 165 Wn.2d at 30.

Burton argues that the prosecutor improperly gave her personal opinion in closing argument by arguing (1) the behavior modification contracts were self-serving to Burton, (2) Debbie Burton's testimony was not helpful, and (3) Burton's testimony was not credible. But each of these arguments fell within the prosecutor's wide latitude to argue inferences from the evidence. The prosecutor did not improperly give her personal opinion during closing argument on any of these points. Burton has not shown misconduct on this point.

No. 42414-2-II;
Consolidated with No. 44090-3-II

D.      *Burton Has Not Shown Any Incomplete Transcription of the Proceedings*

Burton next argues that his rights were violated by an incomplete transcription of the proceedings. Burton's claim relies on matters outside the record and we do not consider it. *McFarland*, 127 Wn.2d at 335.

E.      *Burton Has Not Shown Cumulative Error*

Burton argues that cumulative error denied him the right to a fair trial. The cumulative error doctrine applies when several errors occurred at the trial court that would not merit reversal standing alone, but in aggregate effectively denied the defendant a fair trial. *State v. Hodges*, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). Burton has shown only that the trial court committed harmless error by sentencing him without findings of fact or conclusions of law and that a condition in his sentence was erroneous. Burton has shown no other error. He has not shown any accumulation of error, thus his argument fails.

F.      *Burton Has Not Shown Ineffective Assistance of Appellate Counsel*

Finally, Burton argues that his appellate counsel rendered ineffective assistance by (1) failing to communicate with him and Karen, (2) failing to send him missing portions of trial transcripts, and (3) failing to send him unspecified "other requested materials." SAG at 19-20. All of these arguments are based on facts outside the record and we do not consider them. *McFarland*, 127 Wn.2d at 335; *see also In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2004) ("A criminal defendant's first opportunity to raise an ineffective assistance of appellate counsel claim is often on collateral review.").

28

No. 42414-2-II;
Consolidated with No. 44090-3-II

CONCLUSION

We remand and order the trial court to strike the words "or his or her family" from the judgment and sentence. Otherwise, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Penoyar, J.

_____
Bjorgen, J.