[No. 32897. *En Banc.* February 14, 1955.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES G. O'DELL, *Appellant*.[1]

[1]Reported in 279 P. (2d) 1087.

*Cameron Sherwood* and *Robert A. Comfort,* for appellant.

*Aurel M. Kelly,* for respondent.

HAMLEY, C. J.—This is an appeal from a judgment and sentence entered on jury verdicts of guilty of the crime of grand larceny and of being an habitual criminal. Present counsel for appellant and respondent, respectively, appeared for the first time at the *En Banc* hearing before this court.

The grand larceny conviction was based upon an information filed under RCW 9.54.010 (2) [*cf.* Rem. Rev. Stat., § 2601 (2)]. It charges that, on or about August 4, 1950, appellant wilfully, unlawfully, and feloniously, by color and aid of a check of that date, obtained three hundred seventeen dollars from Sears, Roebuck & Company, in Walla Walla, Washington, with intent to deprive the owner thereof, knowing that the drawer of the check was not authorized or entitled to draw the same. The check in question was signed "May Harvey," followed by a Walla Walla street address. Appellant was named as payee of the check, and the face of the check carries the notation "Tree work." The name of appellant, as endorser, is written on the back of the check.

Appellant is self-employed as a tree surgeon. He did not testify, but his wife testified that she had seen a woman give her husband a check on the day in question, and that the endorsement on the back was in his handwriting. She further testified that the writing on the face of the check was not appellant's. There was other testimony to the effect that there was no such address as that shown under the name of the drawer, and that the bank on which the check was drawn held no account in the name of "May Harvey."

One of the assignments of error raises the question whether the trial court should have granted a new trial on the ground that the verdict was contrary to the law and evidence, because the specimens or exemplars used by a handwriting expert for purposes of comparison with the writing on the check were not proved or admitted to be in the handwriting of appellant.

Twelve such specimens or exemplars were used. One of these was a handwritten note, with appellant's name at the bottom. The others consisted of photostatic copies of various words, figures, and signatures which, we are told, were prepared by masking all but the photographed portions of several reports made to the board of prison terms and paroles. This latter information was properly withheld from the jury. While not pertinent to the specific question now being discussed, it may be noted that, in affidavits supporting a motion for new trial on the ground of newly discovered evidence, it is alleged that the handwritten note and several of the photostatic exemplars were actually in the handwriting of appellant's wife.

The handwriting expert, George H. Fleming, after discussing the points of similarity between the writing on the check and the writing on the exemplars, expressed the view that all of the handwriting on the questioned document and on all of the exemplars was by the same person.

Neither he nor any other witness, however, testified that the handwriting on the exemplars was that of appellant. Hence, the exemplars did not furnish a legal standard of comparison with the writing on the check. *State v. Mc-*

*Guff,* 104 Wash. 501, 177 Pac. 316; *State v. Brassfield,* 33 Idaho 660, 197 Pac. 559.

The testimony of the handwriting expert was apparently produced for the purpose of proving two of the material allegations of the information. The first such purpose was to establish identity—to prove that appellant was the man who presented the check to Sears, Roebuck & Company. If the endorsement was made by the same person whose handwriting appears on the exemplars, and if the handwriting on the exemplars was proved or admitted to be that of appellant, this would tend to establish that it was appellant who presented the check and received the money. But since there was no attempt to establish that the exemplars were, in fact, in the handwriting of appellant, this chain of proof was necessarily incomplete.

On this issue of identity, however, the deficiency just noted would not entitle appellant to a dismissal or new trial. This is true because there was other testimony, given by a store official, positively identifying appellant as the person who presented the check and received the money. Moreover, the testimony of appellant's wife, that the endorsement was by appellant, would be sufficient to establish identity.

The second material allegation of the information, concerning which the testimony of the handwriting expert is relevant, is that having to do with the elements of intent and knowledge. The information charged, substantially in the words of the statute (RCW 9.54.010 (2)), that appellant obtained the three hundred seventeen dollars "with intent to deprive the owner thereof, . . . knowing, that the drawer of said check was not authorized or entitled to draw the same." The jury was correctly instructed that the state had the burden of proving such intent and knowledge beyond a reasonable doubt. *State v. Post,* 152 Wash. 393, 278 Pac. 164; *State v. Gilmore,* 42 Wn. (2d) 624, 257 P. (2d) 215.

No direct testimony was offered by the state bearing specifically upon the questions of intent or knowledge.

This is understandable, since these elements can rarely be proved by direct testimony. They must, however, be proved at least circumstantially.

Except for the testimony of the handwriting expert, this was not done. Proof of endorsement and presentment of a check, which check is later returned because of insufficient funds, does not directly or circumstantially prove that the endorser knew the drawer of the check was not authorized to draw it. It fails to meet the test of acceptable circumstantial evidence, because the facts so shown are not inconsistent with the hypothesis that the endorser believed the check to be good and was himself victimized by the drawer.

If, however, it is shown that the endorser of the check prepared the entire instrument and forged the name of a drawer thereon, felonious intent and knowledge are amply shown. The handwriting expert so testified. But, again the difficulty is that the foundation for his opinion is non-existent, because of the failure to connect appellant with the exemplars.

The handwriting expert's opinion that all of the writing on the check (including the endorsement) was by the same person was not based upon a comparison of the endorsement with the writing on the face of the check. Rather, it was based on a comparison of the writing on the check with the exemplars. The witness called attention to twelve points of similarity between the writings in question. In ten instances, the witness was comparing the writing on the face of the check (exclusive of appellant's name) with the exemplars. In only two instances was there a comparison between the writing of appellant's name as it appears on the check and as it appears in the exemplars. As to these two cases, the witness did not indicate whether he was talking about the name as it appears on the face of the check, or the endorsement on the back.

The witness based his opinion on what he said were ten points of similarity. He further indicated, in effect, that eight points of similarity were regarded as sufficient to

determine the authenticity of handwriting. It is therefore apparent that the opinion of the witness was based primarily upon the exemplars, which were not shown to be in appellant's hand.

■■ The state argues that, since appellant did not object to the reception of the exemplars in evidence, he in effect admitted their authenticity, and cannot now point to this lapse in proof. We find no merit in this contention. Counsel for respondent did not state that the exemplars were in the handwriting of appellant. Consequently, there was no reason to object to their admission. The state must prove each element of its case. A defendant is not required to call attention to deficiencies in the state's case. Appellant is not asserting that the court erred in receiving the exhibits, but that they do not tend to prove the allegations of the information.

In view of the conclusions expressed above, it is unnecessary to consider the several other assignments of error directed to the conviction of the crime of grand larceny.

One assignment of error relating to the habitual criminal conviction remains to be considered, as it pertains to a question which may arise at the new trial.

One of the previous convictions relied upon by the state was a conviction of the crime of larceny, entered on September 8, 1937, in the circuit court of the state of Oregon for Hood River county. Appellant contends that the evidence submitted in proof of this conviction was insufficient.

To prove this conviction, the state offered a set of documents certified by the warden of the Oregon state penitentiary. There was attached thereto a certificate by the secretary of state of Oregon that the named warden was the official custodian of the original records of that penitentiary, and that the signature attached to the warden's certificate was genuine.

One of the documents covered by the warden's certification was a copy of the judgment and sentence in question, showing the signature of the circuit judge. As a part of this judgment and sentence, there was a certificate by the county

clerk for Hood River county, to the effect that he had compared the transcript of the journal entry with the original entry, and that the transcript was a true and correct copy of the original.

The records and proceedings of a sister state must be proved in the manner specified in 28 U. S. C. § 1738, or in the less stringent manner prescribed by RCW 5.44.010, Rem. Rev. Stat., § 1254. Both procedures call for authentication by the attestation of the clerk of the court. The state statute requires that the seal of the court be annexed. The Federal statute requires that the seal be annexed, if a seal exists. The Federal statute also requires a certificate of a judge of the court that the attestation is in proper form.

These statutes contemplate that the original certifications will be introduced in evidence. See *State v. Johnson,* 194 Wash. 438, 78 P. (2d) 561. This was not done in the instant case. The warden's certification that a specified document is an exact copy of the judgment and sentence as certified by the clerk of the court is insufficient.

The judgment and sentence is reversed, and the cause is remanded for a new trial.

ALL CONCUR.