[No. 46653.  En Banc.  July 17, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. RICKY NORMAN DESCOTEAUX, *Petitioner.*

32

*Jeffrey H. Hartje* of *University Legal Assistance,* for petitioner.

*Donald C. Brockett, Prosecuting Attorney,* and *Clark D. Colwell, Deputy,* for respondent.

DOLLIVER, J.—Defendant Ricky N. Descoteaux was convicted by a jury of escape in the first degree. The Court of Appeals affirmed. We accepted defendant's petition for review and reverse.

Defendant was in the custody of the Spokane work release unit of the Spokane County–City Detention Center.

His parole date was set for January 4, 1978. On the morn-
ing of November 8, 1977, he was released to report to his
job at a florist shop. He failed to return to the unit that
evening as required by his schedule, and was apprehended
2 days later at his fiancee's house in Spokane.

Descoteaux was charged with escape in the first degree.
RCW 9A.76.110. At trial, he testified he did not report for
work on November 8, 1977, because he was looking for a
new, better–paying job. He had notified a counselor at the
unit on the previous evening that he intended to seek new
employment the next day.

Ms. Rickie Guyll, defendant's financee, went with him
while he was looking for a new job. That afternoon she
experienced severe abdominal pain. Defendant took her to
the emergency room at a hospital but she was not admitted.
While at the hospital, defendant unsuccessfully attempted
to telephone a counselor at the work release facility and a
detective who was off duty.

Defendant testified that he did not return to the unit
that evening because he felt he needed to care for his fian-
cee and her three children. Ms. Guyll's abdominal pain
continued, and on two occasions defendant called an ambu-
lance. She was taken to a hospital both times, but not
admitted.

Two days later, on November 10, 1977, Ms. Guyll was
feeling better and defendant testified he had decided to
return to the work release facility. Before he turned himself
in, however, the police and a work release investigator
arrived at Ms. Guyll's house to arrest him. According to
defendant, he went out the front door of the house to sur-
render and was looking for the officers when they arrested
him. Ms. Guyll corroborated his testimony.

In contrast, the work release investigator testified
defendant came out of the door, looked at the officers, and
took off running in the opposite direction. The investigator
yelled at defendant; defendant took about three steps and
then stopped. He was taken into custody and was later
convicted of escape in the first degree.

Three issues are presented: (1) Is intent to evade the due course of justice an essential element of the crime of escape in the first degree? (2) Was the work release officer's testimony sufficient to prove that defendant was incarcerated on a felony conviction? and (3) Did the trial court err in allowing the State to cross–examine defendant on whether he was scheduled to take a polygraph examination?

Defendant first contends that an essential element of the crime of escape is the intent to evade the due course of justice. He was convicted under RCW 9A.76.110(1) which provides:

> A person is guilty of escape in the first degree if, being detained pursuant to a conviction of a felony, he escapes from custody or a detention facility.

The United States Supreme Court recently enunciated the mental culpability required for escape from federal custody under 18 U.S.C. § 751(a) (1976) which, like RCW 9A.76.110(1), does not contain the elements of escape. The Supreme Court held "the prosecution fulfills its burden under § 751(a) if it demonstrates that an escapee *knew* his actions would result in his leaving physical confinement without permission." (Italics ours.) *United States v. Bailey,* 444 U.S. 394, 408, 62 L. Ed. 2d 575, 100 S. Ct. 624, 633 (1980). The opinion reversed the Court of Appeals which had required the prosecution to prove that the defendant acted "with an intent to avoid confinement." *United States v. Bailey,* 585 F.2d 1087, 1093 (D.C. Cir. 1978). The Supreme Court found nothing in the language or legislative history of section 751(a) to indicate Congress intended to require such a heightened standard of culpability. Rather, proof that defendant acted knowingly was sufficient to support a conviction. *United States v. Bailey,* 444 U.S. 394, 62 L. Ed. 2d 575, 100 S. Ct. 624 (1980); Comment, *Intent, Duress, and Necessity in Escape Cases,* 68 Geo. L.J. 249 (1979).

The language of the state and federal escape statutes is similar. We adopt the analysis enunciated in *Bailey* and apply it to Washington's first degree escape statute. Thus,

defendant could be convicted of escape if he knew that his actions would result in leaving confinement without permission. Nothing in the language of RCW 9A.76.110 or in the legislative history suggests the legislature intended the prosecution to prove that defendant left custody with an intent to avoid confinement.

Next defendant asserts the evidence was insufficient to prove that he was being held on a felony conviction when he did not return to the work release facility. Under RCW 9A.76.110, the State must prove that defendant was incarcerated pursuant to a felony conviction at the time he escaped. The only evidence of a felony conviction introduced at trial was the testimony of defendant's work release officer:

Q. What was Mr. Descoteaux's custody status . . .? A. Mr. Descoteaux was brought from the Monroe State Reformatory . . . to the Spokane work release unit. . . . Q. Well, was he . . . under convictions of any kind? A. Yes, he was under two convictions. One was a grand larceny conviction which was back in June of 1974, and counts 1 and 2, tampering with a witness back in January of 1977. Q. So was he then in custody under those convictions? A. Yes, he was.

No documents were submitted to substantiate the officer's testimony. At the conclusion of the trial, defendant moved for a directed verdict on the grounds that the State failed to produce sufficient evidence that he was detained pursuant to a felony conviction.

Defendant contends that a certified copy of the judgment of conviction is required to prove a felony conviction. The confinement element of the crime is ordinarily proved by documentary evidence. *Bayless v. United States,* 381 F.2d 67 (9th Cir. 1967); *see generally* 27 Am. Jur. 2d *Escape, Prison Breaking, and Rescue* § 19 (1966). While copies of the judgment and sentence may be admitted to prove a conviction, they must be certified by the court with the seal of the court annexed. RCW 5.44.010; *State v. Murdock,* 91 Wn.2d 336, 588 P.2d 1143 (1979); *State v. O'Dell,* 46 Wn.2d 206, 279 P.2d 1087 (1955). We have held that if the State

fails to introduce certified copies of the judgment of conviction, an essential element of proof is missing. *State v. Murdock, supra.*

*Murdock* and *O'Dell*, however, are factually distinguishable from the present case. In those cases, the State sought to prove prior convictions by uncertified copies of the conviction. Thus, the cases dealt with authentication rather than the sufficiency of oral testimony.

■ Since no documents were introduced in the present case, the question is not one of authentication, but rather whether oral testimony is sufficient to prove a prior conviction. In seeking to prove a prior conviction, the State must comply with the best evidence rule—the best evidence must be produced. ER 1002–05; *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979); 5 R. Meisenholder, Wash. Prac. §§ 91–96 (1965 & Supp. 1979).

Clearly, the best evidence of defendant's prior conviction is a certified copy of the judgment of conviction. RCW 5.44.010. The State failed to produce this document or make any showing of its unavailability. Under these circumstances, the testimony of the officer as to the contents of the judgment of conviction was an objectionable method of proof. *See State v. Fricks, supra.* Moreover, the officer's testimony that defendant was incarcerated on two felonies was hearsay. ER 801(c).

Defendant did not object to the testimony. Had he objected, the officer would not have been permitted to testify as to defendant's convictions, and the State would have been required to produce a certified copy of the judgment of conviction. Nonetheless, because no objection was made, the trial court did not err in allowing the officer's hearsay testimony.

Defendant contends, however, this issue is a matter of constitutional moment and that to require defendant to object to the oral testimony as to his felony convictions shifts the burden of proof to defendant and is a denial of constitutional due process. *State v. Murdock, supra,* is cited for this proposition.

In *Murdock,* the *sole* evidence upon which the State relied to prove the prior convictions was the uncertified copies of the convictions. Furthermore, in contrast with this case, a timely objection was made to the admission of the uncertified records and, as we held, they were inadmissible. Even though defendant Murdock admitted in his *offer of proof* that he had pleaded guilty to the named crimes, there was no testimony before the jury that he had in fact been convicted of the crimes charged.

> Obviously the State believed he had been convicted, and took his testimony as proof of the fact. But the State's obligation is to prove that fact to the *jury,* and it simply failed to introduce any competent evidence in this regard.

*Murdock,* at 341.

Here, in contrast, the State introduced evidence of defendant's prior convictions to the jury and no objection was raised. Although not the best evidence available, the oral testimony was sufficient to submit the issue to the jury. We find no constitutional right has been violated. The trial court was correct in denying defendant's motion for a directed verdict.

Finally, defendant claims the trial court erred in allowing the prosecution to ask him the following question on cross–examination:

> Q. Mr. Descoteaux, is not it a fact then on November 9th, 1977, you were scheduled to take a polygraph— commonly referred to as a "lie detector" examination— regarding possible violations, perhaps even criminal activities on your part?

Both the trial court and the Court of Appeals held the question was admissible on cross–examination as it tended to rebut defendant's direct testimony on his motive or intent for not returning to the work release facility. Defendant's contention that the question was on a collateral matter was rejected. A witness or a defendant cannot be impeached upon matters collateral to the principal issues being tried. A matter is collateral if the evidence is

inadmissible for any purpose independent of contradiction. *State v. Oswalt,* 62 Wn.2d 118, 381 P.2d 617 (1963); *State v. Lahti,* 23 Wn. App. 648, 597 P.2d 937, *review denied,* 92 Wn.2d 1036 (1979).

We agree that the question on the scheduled polygraph examination was not collateral. Defendant contended that intent to evade the due course of justice was an element of escape in the first degree and the inquiry raised an alternative reason why defendant did not return to the work release facility. Therefore, the question pertained to an issue in the case and had a purpose independent of contradicting defendant's testimony.

Even though the question was not on a collateral matter, we concur with defendant that it was error to allow the inquiry. The well established rule is that the results of a polygraph examination are not admissible absent a stipulation by both parties. *State v. Young,* 89 Wn.2d 613, 574 P.2d 1171, *cert. denied,* 439 U.S. 870, 58 L. Ed. 2d 182, 99 S. Ct. 200 (1978); *State v. Woo,* 84 Wn.2d 472, 527 P.2d 271 (1974); *State v. Pleasant,* 21 Wn. App. 177, 583 P.2d 680 (1978), *review denied,* 91 Wn.2d 1011, *cert. denied,* 441 U.S. 935, 60 L. Ed. 2d 664, 99 S. Ct. 2058 (1979). *See* Annot., *Physiological or Psychological Truth and Deception Tests,* 23 A.L.R.2d 1306 (1952). Generally, evidence of a polygraph examination is excluded on the grounds that the technique has not attained general scientific acceptability. *State v. Pleasant, supra. See State v. Demos,* 25 Wn. App. 15, 605 P.2d 786 (1979).

Here, however, defendant never took the polygraph test and therefore no results were introduced into evidence. The mere fact a jury is apprised of a lie detector test is not necessarily prejudicial if no inference as to the result is raised or if an inference raised as to the result is not prejudicial. *See Dean v. State,* 325 So. 2d 14 (Fla. Dist. Ct. App. 1975), *cert. denied,* 333 So. 2d 465 (1976); *Sullivan v. State,* 303 So. 2d 632 (Fla. 1974), *cert. denied,* 428 U.S. 911, 49 L. Ed. 2d 1220, 96 S. Ct. 3226 (1976). However, "such evidence is liable to be prejudicial and should be

admitted only when clearly relevant and unmistakably nonprejudicial.'" *Dean v. State, supra* at 18, quoting *Johnson v. State,* 166 So. 2d 798, 805 (Fla. Dist. Ct. App. 1964).

We hold the inquiry was improper as its prejudicial effect outweighed any probative value. ER 403. The reference in the question to "possible violations, perhaps criminal activities" on defendant's part allowed the jury to speculate and draw inferences that defendant had violated the terms of his work release program and engaged in criminal activities. A defendant in a criminal case must be tried on the offense charged and evidence of unrelated acts of misconduct are inadmissible. *State v. Emmanuel,* 42 Wn.2d 1, 253 P.2d 386 (1953). Although a defendant who takes the stand in his own defense is subject to all the rules of evidence which apply to other witnesses (*State v. Gakin,* 24 Wn. App. 681, 603 P.2d 380 (1979)), no witnesses may be impeached by evidence of prior acts of misconduct. *State v. Lampshire,* 74 Wn.2d 888, 447 P.2d 727 (1968); *State v. Battle,* 16 Wn. App. 66, 553 P.2d 1367 (1976).

The scope of cross–examination is within the discretion of the trial court and will not be disturbed unless there is a manifest abuse of discretion. *State v. Young, supra; State v. Reed,* 25 Wn. App. 46, 604 P.2d 1330 (1979). Although the inquiry on the polygraph examination alone in some circumstances may be insufficient to constitute reversible error, when combined with the reference to possible criminal violations, the question amounted to prejudicial error. The trial court abused its discretion in allowing the inquiry on cross–examination.

The Court of Appeals and the conviction of defendant are reversed, and the cause is remanded for new trial.

UTTER, C.J., ROSELLINI, STAFFORD, BRÁCHTENBACH, HOROWITZ, HICKS, and WILLIAMS, JJ., and FARIS, J. Pro Tem., concur.