FILED
COURT OF APPEALS
DIVISION II

2014 JUN 17 AM 8: 36

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44992-7-II |
| Respondent, | |
| v. | |
| FRANCISCO G. CASTRO, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Francisco Castro was convicted of one count of first degree malicious mischief and one count of bail jumping. He appeals, arguing that (1) the evidence was insufficient to support his bail jumping conviction, (2) he received ineffective assistance of counsel, and (3) the trial court erred by admitting extrinsic evidence to impeach his testimony on collateral matters. We disagree and affirm.

## FACTS

Francisco Castro and Jennifer Fox married in 2007 and had two children. They separated in July 2012 and divorced in 2013. Fox lived next to Island Lake in Mason County.

One morning while they were separated, Fox awoke at about 5:00 A.M. to the sound of loud music coming from her driveway. Remaining in bed, Fox assumed that Castro was playing the music "[b]ecause it wouldn't have been the first time that [Castro] came to my house in the morning or the middle of the night since we'd been separated." Report of Proceedings (RP) at 31.

Fox finally got up and looked out her front window after hearing a car "burning out" of her driveway. RP at 31. Although she could see only the car's taillights as it sped away, she saw that her car was no longer parked in her driveway. From a back window, Fox then saw that her car was floating in the lake with its driver's door open and headlights on.

Fox called 911. She also noticed that during the night, she had missed Castro's phone calls, including one call about 15 minutes before she found her car in the lake.

The car sank, and a dive team eventually pulled it out of the lake. Fox's insurer declared the car a total loss and paid her $26,554.

The State initially charged Castro with one count of first degree malicious mischief. By signing the trial court's scheduling order and notice, Castro promised to personally appear at several hearings, including a pretrial hearing set for December 24, 2012. But Castro did not appear at that hearing. The trial court issued a bench warrant for Castro's arrest.

According to Castro, he came to the courthouse on December 24 but found the assigned courtroom empty. He further claimed that he went to the clerk's office and spoke with a staff member who told him he could address the warrant the next day when the court was open. Castro appeared on December 26, and the bench warrant was quashed that day. By second amended information, the State also charged Castro with bail jumping.

At trial, Castro testified in his own defense. On cross-examination, the State asked whether Fox had been at his house the night before the incident and, if so, what had happened. Castro answered, "We just have dinner and sex and have a little fun with the kids." RP at 84.

2

After Castro testified, the State sought to call Fox and Fox's friend as rebuttal witnesses to contradict Castro's testimony about the night before the incident. Over Castro's objection, the trial court allowed the State to elicit this testimony.

On rebuttal, Fox denied having dinner with Castro or having sex with him. Instead, she testified that she had dinner with a friend, who later accompanied her to Castro's house to pick up Fox's children. Fox testified that she stayed at the house for 10 to 15 minutes and that the friend was with her the entire time. Fox further testified that at one point Castro pulled her down onto a bed in the living room, but the friend helped her get up. During her own testimony, Fox's friend corroborated this account.

The jury found Castro guilty of both counts, and the trial court entered convictions accordingly. Castro appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Castro first argues that the evidence is insufficient to support his conviction for bail jumping. We disagree.

When a defendant challenges the sufficiency of the evidence supporting his conviction, we examine the record to decide whether any rational fact-finder could have found that the State proved each element of the offense beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). In a sufficiency of the evidence challenge, the defendant admits the truth of all the State's evidence; therefore we consider the evidence and all reasonable inferences from it in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d

1068 (1992). Further, direct evidence and circumstantial evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A person commits bail jumping if, "having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state," he fails to appear in court as required.[1] RCW 9A.76.170(1). Here, the to-convict instruction referred only to a release by court order, omitting any mention of an admission to bail.[2] Thus, under the law of the case doctrine, the State was required to prove that Castro had been released by court order. *See State v. Hickman*, 135 Wn.2d 97, 99, 954 P.2d 900 (1998); *State v. Medina*, 112 Wn. App. 40, 45, 48 P.3d 1005 (2002).

Castro claims that the evidence is insufficient to show both (1) that he had been released by court order and (2) that he knew he was required to personally appear. We disagree.

First, the evidence is sufficient to support a reasonable inference that Castro had been released by court order. The State concedes that it introduced no direct evidence on this point, and the record could have been clearer. Nonetheless, at Castro's arraignment, the State served him with the original information, and the trial court entered a scheduling order and notice

---

[1] Quoting *State v. Downing*, 122 Wn. App. 185, 192, 93 P.3d 900 (2004), the State asserts, "'The elements of bail jumping are satisfied if the defendant (1) was held for, charged with, or convicted of a particular crime; (2) had knowledge of the requirement of a subsequent personal appearance; and (3) failed to appear as required.'" Br. of Resp't at 3-4. But the State also concedes that a bail jumping conviction requires proof that the defendant was released by court order or admitted to bail. We accept this concession because other cases have recited the elements of bail jumping to include that the defendant "was released by court order or admitted to bail." *See State v. Pope*, 100 Wn. App. 624, 627, 999 P.2d 51 (2000).

[2] The to-convict instruction stated the relevant element of bail jumping as: "That the defendant had been released by court order with knowledge of the requirement of a subsequent personal appearance before that court." 2 CP at 20.

setting pretrial hearings at which Castro promised to appear. Further, Castro testified that he had been arrested after Fox's car was found in the lake, but on December 24 he came to court for his pretrial hearing and visited the clerk's office after finding the courtroom empty. From the reasonable inferences drawn from this evidence, a rational fact-finder could determine beyond a reasonable doubt that Castro had been released by court order.

Castro's second claim also fails because the evidence was sufficient to prove that he knew his personal appearance was required. The State may prove this knowledge with evidence showing the defendant was notified of the date of the required personal appearance. *State v. Fredrick*, 123 Wn. App. 347, 353, 97 P.3d 47 (2004). Here Castro's signature appears on the scheduling order and notice immediately below the statement, "I promise to appear on the dates set out above." Ex. 9. From this promise, a rational fact-finder could determine beyond a reasonable doubt that Castro knew he was required to personally appear.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Castro next argues that he received ineffective assistance of counsel because his attorney failed to call a staff member of the court clerk's office to testify on his behalf. We disagree.

Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact, which we review de novo. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). To prevail on his ineffective assistance of counsel claim, Castro must show both that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to make either showing is fatal to the claim. *Strickland*, 466 U.S. at 700.

In reviewing claims of ineffective assistance, we begin with a strong presumption of counsel's effectiveness. *Strickland*, 466 U.S. at 689. Counsel's performance is deficient if it falls below an objective standard of reasonableness under all the circumstances. *Strickland*, 466 U.S. at 688, 690. But counsel's performance is not deficient if it can be characterized as a legitimate trial tactic. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). In general, the decision of whether to call a specific witness is presumed to be a matter of legitimate trial tactics. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 742, 101 P.3d 1 (2004). This presumption can be overcome by showing that counsel failed to investigate the available defenses, adequately prepare for trial, or subpoena necessary witnesses. *Davis*, 152 Wn.2d at 742.

Castro fails to overcome our presumption that his counsel performed effectively. The record shows that counsel investigated Castro's claim that he found the courtroom empty and then spoke with staff from the clerk's office. Counsel identified the staff member who spoke with Castro, but she could not remember when their conversation occurred. On the record, counsel explained that the staff member's inability to remember the date of their conversation "is the problem as far as calling her as a witness." RP at 70. In other words, counsel decided not to call the staff member because her testimony, if it was admissible, would provide only weak support for Castro's version of events. This decision can be characterized as a legitimate trial tactic. *See Kyllo*, 166 Wn.2d at 863.

Because counsel's decision did not fall below an objective standard of reasonableness, counsel's performance was not deficient. *See Strickland*, 466 U.S. at 688. Therefore Castro's ineffective assistance claim fails. *See Strickland*, 466 U.S. at 700.

6

### III. EXTRINSIC EVIDENCE ADMITTED TO PROVE COLLATERAL MATTERS

Lastly, Castro argues that the trial court erred by admitting extrinsic evidence of a collateral matter to contradict his testimony. We disagree.

We review evidentiary rulings for an abuse of discretion. *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Darden*, 145 Wn.2d at 619. A trial court necessarily abuses its discretion when basing its ruling on an error of law. *State v. Quismundo*, 164 Wn.2d 499, 504, 192 P.3d 342 (2008).

Extrinsic evidence of collateral matters may not be offered to impeach a witness. *State v. Fisher*, 165 Wn.2d 727, 750, 202 P.3d 937 (2009); *State v. Carlson*, 61 Wn. App. 865, 876, 812 P.2d 536 (1991). Evidence pertains to a collateral matter if it lacks direct relevance to the issues being tried and serves only to contradict a witness. *State v. Descoteaux*, 94 Wn.2d 31, 37-38, 614 P.2d 179 (1980), *overruled on other grounds by State v. Danforth*, 97 Wn.2d 255, 257 n.1, 643 P.2d 882 (1982); *State v. Fankhouser*, 133 Wn. App. 689, 693, 138 P.3d 140 (2006).

Here, Castro testified that Fox had been at his house the night before the incident and that Fox and Castro ate dinner together and had sex. The trial court allowed the State to call two rebuttal witnesses, Fox and Fox's friend, who each contradicted Castro's account of what happened at his house. Specifically, Fox and Fox's friend testified that (1) Fox stayed at Castro's house for 10 to 15 minutes while picking up their children from Castro, (2) during this time Castro pulled Fox down onto a bed in the living room, and (3) Fox and Castro did not eat dinner together or have sex during this time. The trial court reasoned that Castro had opened the door to testimony about whether he was amicable toward Fox on the night before the incident,

but "this door does not open extremely wide because we are not going to be trying a case involving what happened the night before, because then it would—then it would be unduly prejudicial." RP at 87.

In making this ruling, the trial court properly exercised its discretion. Castro's relations with Fox at the time of the incident were directly relevant to his motive for driving her car into the lake. Because the testimony was directly relevant to the issues being tried, it was not a purely collateral matter. The ruling allowing Fox and her friend to testify in rebuttal was not manifestly unreasonable, based on untenable grounds, or made for untenable reasons. Therefore the trial court did not err. *Darden*, 145 Wn.2d at 619.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Hunt, P.J.

_____
Maxa, J.