# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72769-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MARCIANO CARLOS ELLIS, | ) | |
| Appellant. | ) | FILED: March 9, 2015 |
| | ) | |

APPELWICK, J. — Ellis appeals his conviction for assault in the second degree and first degree unlawful possession of a firearm. He contends that the trial court erred when it admitted irrelevant evidence. He claims the prosecutor made several improper comments during closing argument. We affirm.

## FACTS

Charles Roshau decided to start an edible marijuana company. Marciano Ellis was helping Roshau with the business. On the morning of September 11, 2012, Ellis went to Roshau's home to help him with the labels for the products. When Ellis arrived at Roshau's house, Roshau confronted Ellis about why Ellis was using Roshau's personal information to apply for a car loan. Roshau told Ellis that he was not going to accept that Ellis was stealing his identity. As Roshau did so, he turned his back to Ellis and began walking to the next room to make a telephone call. While Roshau was turned away from Ellis, Ellis shot Roshau in the lower back with a nine-millimeter gun. The bullet traveled from his buttocks, through his hips, and into his penis. Ellis left the house after firing the one shot at Roshau.

Roshau's girlfriend, Coleena May, was at the house at the time. She called 911 as Roshau made another phone call. Before any emergency vehicles arrived, a 911 operator called Roshau on his phone. Roshau had emergency surgery on September 11, 2012.

On September 26, 2012, a police officer located Ellis at a motel. Ellis was arrested. Ellis had a key to a room at that motel. Police officers found a nine-millimeter gun in the motel room. The bullet casing found at Roshau's house after the shooting was shot from the nine-millimeter handgun the police found in Ellis's motel room.

Ellis was charged with assault in the first degree and, based on a previous offense, unlawful possession of a firearm in the first degree. At trial, Ellis defended based on a theory of self-defense. Both Roshau and Ellis testified. Their testimony conflicted as to the reason they were arguing, whether the nine-millimeter gun belonged to Roshau or Ellis, whether Ellis thought Roshau was going into the next room to make a phone call or retrieve a weapon, and other minor details.

A jury found Ellis guilty of assault in the second degree and unlawful possession of a firearm in the first degree. Ellis was sentenced to 70 months in custody followed by 18 months of community custody. Ellis appeals.

## DISCUSSION

Ellis argues that the trial court abused its discretion by admitting a recording of a 911 call between Roshau and a 911 operator after he had been shot. Ellis argues that the 911 call was both hearsay and irrelevant. Ellis also contends that the trial court abused its discretion by admitting evidence of Ellis' work and salary information. He claims that this evidence was irrelevant and collateral to the issues being tried. Ellis

2

further claims that the prosecutor engaged in misconduct several times during closing argument and deprived him of his constitutional rights to a fair trial. Finally, Ellis maintains that the cumulative effect of all of these errors denied him his constitutional right to a fair and impartial trial.

I. Admissibility of Challenged Evidence

The decision to admit evidence lies within the sound discretion of the trial court and should not be overturned absent a manifest abuse of discretion. State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). An abuse of discretion exists when a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

A.     The 911 Recording

Ellis argues that the trial court erred by admitting the recording of Roshau's conversation with the 911 operator. After Ellis shot Roshau, and after May called 911, the 911 operator called Roshau on his phone. The police had not yet arrived at the time of the phone call. During the phone call, Roshau makes several statements and is very clearly in pain. He is groaning throughout the call and expressed that he could not talk very well. Roshau mentions that he had been shot, that it was Ellis who shot him, and that he and Ellis were fighting because Roshau had confronted Ellis about applying for a car loan with information that was not Ellis's. Ellis argues that the evidence was inadmissible both because it was hearsay and because it was irrelevant.

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. ER 801(c). Hearsay is inadmissible unless it qualifies as an exception under the rules of

3

evidence, court rules, or by statute. ER 802. The trial court found that the 911 recording with Roshau's statements was admissible under either ER 803(a)(1) (present sense impression), ER 803(a)(2) (excited utterance), or ER 803(a)(3) (then existing mental, emotional, or physical condition).

Ellis argues the trial court abused its discretion, because it provided no explanation or analysis for its ruling. The trial court indicated which hearsay exceptions applied. Ellis cites no authority that more is required of the trial court.

Ellis also argues that the trial court erred in admitting the recording, because the State did not provide any grounds for its admissibility. Ellis provides no support for the assertion that the trial court abuses its discretion when it admits hearsay evidence through an exception not specifically suggested by the opposing party. Moreover, the State argued at trial that at the time of the call, Roshau had not had time to think about making up a story and was in too much pain to make up a story. This is consistent with the rationale behind these hearsay exceptions as discussed below.

Ellis further asserts that the three exceptions under which the trial court admitted the statements are inapplicable. A statement satisfies the present sense impression exception when it describes, or explains an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. ER 803(a)(1). A statement satisfies the excited utterance exception if it relates to a startling event or condition and is made while the declarant was under the stress of excitement caused by the event or condition. ER 803(a)(2). A statement satisfies the then-existing mental, emotional, or physical condition if it describes the declarant's then-existing state of mind, emotion, sensation or physical condition. ER 801(a)(3). The rationale behind these

4

exceptions to the rule against hearsay is that there is little risk under these circumstances that the statement offered is inaccurate and untrustworthy. State v. Ryan, 103 Wn.2d 165, 175, 691 P.2d 197 (1984).

When the 911 operator called Roshau, emergency vehicles had not yet arrived. Roshau had been shot moments earlier by Ellis and was seriously injured. He was still under the stress of the shooting. He described his physical condition at the time of making his statements to the operator as in a lot of pain—too much pain to talk. There is little risk that what Roshau was saying was calculated, untrustworthy, or inaccurate. The trial court did not abuse its discretion in concluding that Roshau's statements on the 911 recording were admissible under multiple exceptions to the rule against hearsay.

Even though Roshau's statements on the 911 recording were admissible as hearsay exceptions, they still be must relevant to be admissible. See State v. Parr, 93 Wn.2d 95, 100, 606 P.2d 263 (1980). Ellis contends that Roshau's statements on the 911 call are irrelevant. This is so, he asserts, because the statements about the shooting and the amount of pain he felt do not tend to prove the elements of the crimes charged.

To be relevant, evidence must meet two requirements: (1) the evidence must have a tendency to prove or disprove a fact, and (2) that fact must be of consequence in the context of the other facts and the applicable substantive law. ER 401; State v. Rice, 48 Wn. App. 7, 12, 737 P.2d 726 (1987). Here, Roshau's statements have a tendency to prove the fact that Ellis shot Roshau and that Ellis's motive was anger over being confronted about the car loan. These facts are of consequence for the State to prove that Ellis shot Roshau and that Ellis was not acting in self-defense at the time. Further, that

5

Roshau was in great pain after the shooting does tend to prove an element of the crime of assault—that Ellis inflicted great bodily harm. RCW 9A.36.011(1)(c).

The 911 recording was neither inadmissible hearsay nor irrelevant. The trial court did not abuse its discretion by admitting it into evidence.

B.     Ellis's Work and Salary Information

Ellis contends that evidence about his work and salary was irrelevant. He further asserts that the issue the evidence supported was collateral to the issues being tried.

During trial, Ellis testified that he had no reason to apply for a car loan in Roshau's name. He testified that he had good credit and had five cars of his own at the time. He further offered that he was able to afford the five cars, because he was working for Local 242—the laborers and hod carriers union—and was making about $50,000 a year. Ellis further testified that he kept the gun he shot Roshau with for several weeks instead of turning himself and the gun in immediately, because he did not want to miss a course at the laborers' school on September 17 as part of his apprenticeship program. Ellis later testified that he did not attend the course, because it was rescheduled. The State cross-examined Ellis about all of these assertions. Ellis specifically invited the State to question the union apprenticeship coordinator, Michael Koontz, about these issues.

Subsequently, the State subpoenaed Michael Koontz to testify about Ellis's salary and the course that Ellis testified about. The State also subpoenaed documents in Ellis's employee file. Before Koontz was permitted to testify, Ellis argued that the inquiry into the work information in the documents was a collateral matter—that it was related to a factual issue that had only a remote and indirect connection to the issues at trial. The State explained that the subpoenaed information about Ellis's salary and his attendance

at that class conflicted with Ellis's testimony and that it wanted an opportunity to impeach Ellis.

Grounding its ruling in ER 611, the trial court ruled that Koontz's testimony was admissible to determine Ellis's credibility. It reasoned that Ellis brought up on cross-examination that he did not need the car loan and invited the State to corroborate his union course and salary information with Koontz. After the trial court's ruling and additional cross-examination of Ellis, Koontz testified that Ellis did not attend the labor course on September 17 and that the course was not rescheduled.

Ellis contends the trial court abused its discretion by admitting impeachment evidence and Koontz's testimony on a collateral matter. ER 611(b) states that cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. It further states that the court, in its discretion, can allow inquiry into additional matters. Id. The trial court can grant considerable latitude in cross-examination. State v. Ferguson, 100 Wn.2d 131, 138-39, 667 P.2d 68 (1983).

A witness or defendant cannot be impeached on matters collateral to the principal issue being tried. State v. Descoteaux, 94 Wn.2d 31, 37, 614 P.2d 179 (1980, overruled on other grounds by State v. Danforth, 97 Wn.2d 255, 643 P.2d 882 (1982). A witness may be impeached on only those facts directly admissible as relevant to the trial issue. State v. Fankhouser, 133 Wn. App. 689, 693, 138 P.3d 140 (2006). Extrinsic evidence must be admissible for a purpose other than attacking the credibility of the witness. State v. Hubbard, 103 Wn.2d 570, 576, 693 P.2d 718 (1985).

Here, the extrinsic information relating to Ellis's salary was relevant to the State's theory of Ellis's motive—that Ellis shot Roshau because he was angry Roshau confronted

him about the car loan. Ellis rebutted this motive by testifying that he had no reason to use Roshau's information for a car loan, because he had good credit, good income, and multiple cars. Therefore, the State's questioning of Koontz related to Ellis's financial situation were relevant both to motive and to credibility of Ellis's defense to the motive.

Similarly, the evidence about the union class was relevant, because Ellis fled the scene of the crime and was not arrested until September 26—several days after he shot Roshau. Flight of a person following the commission of a crime is admissible and may be considered by the jury in determining guilt or innocence. State v. Bruton, 66 Wn.2d 111, 112, 401 P.2d 340 (1965). Ellis was not detained until an officer found his car outside a motel and ran the license plate number. Ellis attempted to combat this evidence of guilt by providing an excuse for his flight. At trial, Ellis testified that he planned to turn himself in before he was caught, but that he was waiting to do so until after the labor course. Therefore, the State's questioning of Koontz relating to the existence of the union course, the dates, and Ellis's participation were relevant to whether Ellis had a truthful excuse for continuing to evade the police.

The trial court did not abuse its discretion in admitting Ellis's relevant work and salary information.

## II. Prosecutorial Misconduct

Ellis argues that the prosecutor engaged in prosecutorial misconduct when he made several improper remarks during closing argument and rebuttal.

Prosecutorial misconduct may deprive a defendant of his right to a fair trial. State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). An appellant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice.

8

State v. Walker, 164 Wn. App. 724, 730, 265 P.3d 191 (2011), adhered to on remand, noted at 173 Wn. App. 1027 (2013). Prejudice exists only where there is a substantial likelihood the misconduct affected the jury's verdict. Id. A prosecutor's comments during closing argument are reviewed in context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. Id. The absence of a motion for mistrial at the time of the argument strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial. State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990). Defense counsel's failure to object to alleged prosecutorial misconduct at trial fails to preserve the issue for appeal, unless the misconduct is so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice incurable by a curative instruction. Id.

At trial, Ellis failed to object to any of the prosecutor's remarks during closing argument. After arguments, the jury was generally instructed to make decisions solely upon the evidence presented and that the lawyers' statements are not evidence and should be disregarded if not supported by the evidence or law. Because Ellis did not object to any of the prosecutor's remarks below, he must show that any resulting prejudice from the alleged improper remarks was incurable by an instruction. Swan, 114 Wn.2d at 661.

A. Personal Opinion

Ellis first argues that the prosecutor improperly expressed an independent, personal opinion as to Ellis's guilt and credibility.

A prosecutor may not express an independent, personal opinion as to the defendant's guilt or the credibility of a witness. State v. McKenzie, 157 Wn.2d 44, 53,

9

134 P.3d 221 (2006); State v. Reed, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). There is a distinction between the individual opinion of the prosecuting attorney, as an independent fact, and an opinion based upon or deduced from the testimony in the case. State v. Armstrong, 37 Wash. 51, 54-55, 79 P. 490 (1905). It is not uncommon for statements to be made in final arguments which, standing alone, sound like an expression of personal opinion, but when judged in the light of the total argument and the court's instructions, it is usually apparent that counsel is trying to convince the jury of certain ultimate facts and conclusions to be drawn from the evidence. McKenzie, 157 Wn.2d at 53-54. Prejudicial error does not occur until it is clear that counsel is not arguing an inference from the evidence, but is expressing a personal opinion. Id.

Here, Ellis challenges several portions of the State's closing and rebuttal arguments. First, he challenges the prosecutor's description of his story and testimony as ludicrous and ridiculous. Second, he challenges the prosecutor's statement that Ellis's version of the facts "'makes no sense in any universe you can think of'" and "'isn't true'" and "'couldn't be possible because it doesn't make any sense at all.'" Finally, he challenges the State's assertion that Roshau was not making up what he said during the 911 call.

It is clear that the prosecutor in this case did not express personal opinions about either Ellis's guilt or Roshau's credibility. See State v. Anderson, 153 Wn. App. 417, 430-31, 220 P.3d 1273 (2009) (finding that, in context, prosecutor's comments characterizing the defendant's testimony as "'ridiculous'" and that the State's witnesses were "'just telling the truth'" were not expressions of personal opinion). Viewed in the context of the closing argument, the prosecutor's statements were intended to argue inferences from the

evidence. They were not statements conveying personal opinions about the case. These statements were not improper.

B. Declaration of the Truth

Ellis further contends that the prosecutor improperly requested that the jury declare "'the truth.'" Here, Ellis refers to two of the prosecutor's comments. The prosecutor told the jury that it should "figure out the facts" and that they should "[u]se common sense in deciding what the truth is of this case, what really happened, what the real facts are."

A prosecutor's repeated requests that the jury "declare the truth" can be improper. See, e.g., Anderson, 153 Wn. App. at 429. A jury's job is not to "solve" a case nor is it to declare what happened on a certain day. Id. Rather the jury's duty is to determine whether the State has proved its allegations against a defendant beyond a reasonable doubt. Id. In Anderson, the prosecutor made repeated requests that the jury "declare the truth." Id. But, there, the court concluded that the defendant did not demonstrate a substantial likelihood that the misconduct, to which the defendant timely objected, affected the verdict. Id. The court reached this conclusion because the argument in the context of the jury instructions clearly laid out the jury's actual duties and because both counsel thoroughly discussed the evidence during argument. Id.

Here, the prosecutor only specifically mentioned the "truth" of the facts of the case once. Further, taking the prosecutor's comments in the context of the entire closing and rebuttal arguments and jury instructions, it would have been apparent to the jury that its ultimate goal was not to declare the truth, but rather to determine whether the State met its burden of proof. Additionally, the jury is the trier of fact. As the trier of fact, it is within

11

the province of the jury to determine, or "figure out" the facts based on the evidence presented.

The prosecutor's comments were not improper.

C. Misstatement of the Law of Self-Defense

Ellis then argues that the prosecutor misstated the law of self-defense when he told the jury that it could judge Ellis's actions by whether they themselves would have done the same thing in Ellis's situation. During closing argument, the prosecutor made the challenged remark when explaining the reasonable person standard for self-defense to the jury:

> It's got to be a measured response. That's what that paragraph's essentially telling you. The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.
>
> That's a pretty reasonable standard. What would a reasonably prudent person do? And in some ways, hopefully what we have here is a pretty typical average jury, and you know, you're the reasonably prudent people, and maybe it's a question of what would you do?

A prosecutor's argument to the jury must be confined to the law stated in the trial court's instructions. Walker, 164 Wn. App. at 736. When the prosecutor mischaracterizes the law and there is a substantial likelihood that the misstatement affected the jury verdict, the defendant is denied a fair trial. Id.

In Walker, the prosecutor was attempting to explain the law of defense of others to the jury. Id. at 735-36. The prosecutor began to explain the standard by which the jury should measure the reasonableness of the defendant's actions. Id. at 735. The prosecutor made repeated references such as what members of the jury would do if they

12

knew what the defendant knew at the time and that not a single juror would do what the defendant did in the same situation. Id. In addition, the prosecutor used five PowerPoint slides instructing the jury that "'reasonable person'" and "'reasonable force'" means whether "'I would do it too, if I knew what he knew.'" Id. at 735-36. Defense counsel objected after one of the prosecutor's remarks during rebuttal. Id. at 735.

The Walker court held that the prosecutor's remarks misstated the defense of others standard and were improper, because they encouraged the jury to make its decision personal. Id. at 736. The Walker court concluded that reversal was appropriate because of the cumulative effect of repetitive prejudicial comments throughout closing argument. Id. at 737. It did not rely solely on the prosecutor's improper comments about misstating the defense. Id. at 738-39.

While the prosecutor's statement here is similar to those in Walker, he was not consistently encouraging the jury to make its decision personal, rather the prosecutor used that reference once in order to help explain the reasonable person standard from the self-defense instruction to the jury. Ellis fails to explain why this one comment alone was sufficiently prejudicial to warrant a reversal when the Walker court ultimately relied on cumulative error to reverse despite several remarks misstating the reasonable person standard in that case. Assuming without deciding that the prosecutor's comments were improper, Ellis did not object below. Therefore, on appeal, Ellis has to show that a curative instruction would not have cured any resulting prejudice from the remark. He fails to make this argument.

13

D. Misstatement of the Evidence and Inclusion of Extraneous Evidence

Ellis contends that the prosecutor misled the jury by misstating the evidence and introducing extraneous evidence during closing argument. Specifically, he cites to four sections of the record and claims that none of the facts recited by the prosecutor in those sections was testified to or presented during trial.

A prosecutor may not mislead the jury by misstating the testimony and evidence presented at trial. State v. Reeder, 46 Wn.2d 888, 892, 285 P.2d 884 (1955). Similarly, during closing argument a prosecutor may not introduce extraneous facts unsupported by the record. State v. Belgarde, 110 Wn.2d 504, 516-17, 755 P.2d 174 (1988). But, a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury. State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

First, Ellis challenges the prosecutor's description of Ellis's decision to invite the State to contact Koontz and corroborate the information about his union job and the union course. During trial, Ellis specifically invited the State to contact Koontz about any issues related to his union employment. During closing argument, the prosecutor described Ellis's decision as a "gamble" and said that Ellis gambled that the State would not be able to subpoena Koontz and the union information in time to be presented at trial. The prosecutor was making an argument about Ellis's behavior during the trial and was drawing inferences based on Ellis's testimony that the State should contact Koontz, even when Ellis likely knew that Koontz's testimony would be unfavorable to his case. As such, the prosecutor neither misstated the evidence nor introduced extraneous evidence during closing argument.

14

Secondly, Ellis challenges the prosecutor's comment that it was a "'great tactic'" for defense counsel to challenge Roshau's credibility during closing argument after Roshau was done testifying and would be unable to rebut. The prosecutor made this comment regarding defense counsel's argument in closing, asking why Roshau would have had nine-millimeter bullets in his house if he did not own the gun used during the commission of the crime. There was conflicting information as to who between Roshau and Ellis actually owned the gun. When defense counsel cross-examined Roshau during trial, Roshau testified that he collected bullets, but he was not specifically questioned about nine-millimeter bullets in his home. During closing argument, defense counsel discussed the fact that the bullets at Roshau's house were nine-millimeter bullets that fit the weapon in question. Defense counsel continued that it would not make sense for Roshau to have the bullets as a collector's item and insinuated that the gun used during the shooting must have belonged to Roshau. During rebuttal, the State drew attention to the fact that defense counsel did not cross-examine Roshau about the nine-millimeter bullets and thus did not give Roshau an adequate opportunity to explain why he would have nine-millimeter bullets if he did not own a nine-millimeter gun. The prosecutor was not misstating the evidence nor was he introducing extraneous evidence not in the record. Rather, he was attempting to strategically poke a hole in the defendant's theory by highlighting a potential weakness—that Roshau might have had a reasonable explanation for having the bullets even though he did not own a nine-millimeter gun.

Next, Ellis challenges the prosecutor's description of what Ellis intended to do when he shot Roshau. The prosecutor said that Ellis did not intend to kill Roshau, but stated that Ellis just wanted to teach Roshau a lesson. The prosecutor said that Ellis was

15

thinking, "'You don't talk to me that way, punk. I'll show you who's boss around here. And I'm going to pull out my nine and I'm going to prove it to you.'" While a prosecutor cannot testify about the thoughts of the defendant not in evidence, Ellis did testify that he did not intend to shoot Roshau, but wanted to make enough noise with the gun to make Ellis stop yelling. State v. Pierce, 169 Wn. App. 533, 554, 280 P.3d 1158 (2012) (stating that it is improper for the prosecutor to step into the defendant's shoes and become his personal representative). Again, the prosecutor was drawing inferences based on the testimony and evidence in the record to support the State's theory of the case.

Finally, Ellis challenges the prosecutor's explanation as to why Roshau would call his guardian after he was shot, before calling 911, as unsupported by the record.[1] The prosecutor remarked:

> Why would [Roshau] call Kelly Fiskus? He's been shot. Let's face it. At that point in time he doesn't know whether he's going to live or die, and maybe he thinks he's going to live. He doesn't know if that's going to live or die. And to a man, that can be everything. You talk to a guy who's gone through prostate surgery and become impotent. How many of those guys suffer horribly from it? I'm no longer a man. I don't know if I want to live. Okay? [Roshau]'s 40 years old. At least the guys that go through prostate surgery are usually closer to 55, 60, 75, something like that. [Roshau]'s a 40-years-old guy. And he's in absolute agony, and he calls Kelly Fiskus. Why Kelly Fiskus? What does a solider do on a battlefield when he's been gut shot and he's laying there and thinks he's dying? He cries for his mama. That's what he does. [Roshau] called the only adult woman in his life that is the equivalent of his mother. Of course he did.

There was evidence in the record that Fiskus, Roshau's guardian, was 60 years old and was Roshau's ex-mother-in-law. She handled all of Roshau's financial matters, like making sure that his credit remained intact.

---

[1] Ellis also contends that this comment was an improper appeal to the jury's passion. We discuss this separate challenge related to appeal to the jury's passion below.

Further, the evidence showed that Roshau was in severe pain and was shot in the back, with the bullet traveling through his buttocks through his scrotum and into his penis. A graphic picture of Roshau's bloody penis was admitted into evidence. Roshau also testified that he thought he was dying after he was shot. And, the 911 recording illustrated how much pain Roshau was in.

At least one Washington court has stated that it is improper for a prosecutor to step into a victim's shoes and give his opinions about the victim's thoughts, which were not in evidence. See Pierce, 169 Wn. App. at 554. Roshau testified that he thought he was dying, but he did not testify that he called Fiskus because he thought of her like a mother, feared loss of his manhood, or thought he was about to die. The prosecutor's statements went beyond the evidence. However, we need not decide whether these were fair inferences from the evidence because, even if any of the above statements were improper, Ellis did not object below. And, he fails to show on appeal how he was prejudiced and that the general jury instruction provided, or a specific curative instruction, would not have been sufficient to cure any resulting prejudice.

### E. Appeal to a Jury's Emotions and Sympathies

Ellis contends that the prosecutor improperly made a blatant attempt to sway the jury by appealing to its emotions and sympathies when he referenced Ellis's injuries, insinuated that Ellis was emasculated by the prostate surgery, and likened his call to Fiskus to a dying soldier crying out for his mother.

Mere appeals to the jury's passion or prejudice are inappropriate. Id. at 552. The court in Pierce also stated in dicta that it is improper for a prosecutor to step into a victim's

17

shoes and give his opinions about the victim's thoughts, because it is an improper inflammatory appeal to the jury. See Id. at 554.

Again, even assuming that the prosecutor's statements were an improper appeal to the jury's passion, Ellis failed to object below. Ellis would have to show on appeal that the prosecutor's comments about Roshau's thoughts about being impotent or emasculated or wanting to speak to his maternal figure were so flagrant or ill-intentioned that any resulting prejudice could not be cured with an instruction. Ellis has made no such showing.

Ellis also claims that the prosecutor's references to Roshau as a victim and comment that the case was all about Roshau's rights as a victim were an improper appeal to the jury's passion. Ellis provides no support for the assertion that a prosecutor cannot refer to a victim of a crime as a victim in closing arguments without wrongfully appealing to a jury's passions.

III. Cumulative Effect of Errors

Ellis claims that the cumulative effect of all of the claimed errors materially affected the outcome of his trial, because the errors called Ellis's credibility into question and led the jury to apply incorrect legal standards. He contends that reversal is required.

Reversal under the cumulative error doctrine is appropriate when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial. State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Cumulative error doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial. State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

As discussed above, Ellis has failed to prove how each alleged instance of misconduct affected the outcome of his trial. Similarly, Ellis has failed to establish how these combined alleged instances of misconduct affected the outcome of his trial. As a result, reversal based on cumulative error is inappropriate here.

We affirm.

WE CONCUR: