IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40577-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA KEITH SANFORD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, C.J. — Joshua Sanford appeals his convictions for vehicular assault, attempting to elude a pursuing police vehicle, and third degree driving with a suspended or revoked license, raising multiple claims of error. While we agree with the State that the evidence was sufficient to support Sanford's conviction for vehicular assault, we conclude the trial court erred by improperly admitting impeachment evidence on a collateral matter and allowing the jury to consider unadmitted and prejudicial evidence contained in Sanford's driving record. The cumulative effect of these errors requires reversal and remand for a new trial. In light of our decision, we decline to address Sanford's other issues.

BACKGROUND

In July 2023, Joshua Sanford and his then-girlfriend, Justice Gaines, were riding separate motorcycles on Highway 603 near Napavine, Washington. City of Napavine Police Department Officer Logan Macomber was on patrol in the area in a marked patrol vehicle.

Officer Macomber observed the two motorcycles, one red and one blue, traveling side by side in front of him. Both motorcycles crossed the road's center line and fog line multiple times. He also observed one rider place both legs on one side of the motorcycle while driving, and the other rider lifted their feet up in the air while driving. Officer Macomber further observed the motorcycles attempt to pass another vehicle in a no passing zone.

Positioned directly behind the motorcycles, Officer Macomber activated his emergency lights and siren to initiate a traffic stop. Rather than pull over, the motorcycles increased speed. Officer Macomber believed the motorcycles were fleeing from the stop.

The motorcycles failed to stop at a red light at the intersection of Highway 603 and Washington Street, turned left onto Washington Street, and continued westbound. After the turn, Officer Macomber continued following the motorcycles. He observed other vehicles pull over during the chase, while the motorcycles passed. At this point, Officer Macomber chose to deactivate his lights and sirens due to safety concerns.

As Officer Macomber turned onto Washington Street, he observed the blue motorcycle collide with the red motorcycle just before a "Y intersection" in the roadway where Haywire Road branches off from Washington Street. Both riders were ejected from their motorcycles. Following the collision, Officer Macomber identified Sanford as the rider of the blue motorcycle and Gaines as the rider of the red motorcycle.

Officer Macomber approached the scene and activated his body camera. Body camera video shows Gaines expressing back pain and lying on the ground. The video also captured Sanford apologizing to Gaines, followed by her response: "Fucking pay attention next time, what the fuck is wrong with you," to which Sanford again apologized stating, "that was really dumb." Ex. 28 (Macomber body cam crash scene) at 1 min., 56 sec. through 2 min., 7 sec.

Officer Macomber arrested Sanford for attempting to elude and transported him to the hospital. Officer Macomber intended to arrest Gaines as well, however, she was first transported to the hospital due to her condition.

At the hospital, after being read his *Miranda*[1] rights, Sanford agreed to speak with Officer Macomber. When Officer Macomber asked Sanford if he knew he was being pulled over, Sanford responded "I was just going fast." Ex. 28 (Sanford Statement 1) at 1 min., 10 sec. through 1 min., 15 sec. When asked if he saw the lights behind him,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Sanford responded "I seen there was a cop." Ex. 28 (Sanford Statement 1) at 1 min., 15 sec. through 1 min., 21 sec.

*Procedure*

The State charged Sanford with vehicular assault, attempting to elude a pursuing police vehicle, and third degree driving with a suspended or revoked license.

During trial, the prosecutor first called Officer Macomber, who testified consistent with the facts above. During his testimony, the court admitted his body camera video into evidence as exhibit 28. After playing the video clip from the crash, Officer Macomber testified that, at the scene, he heard Gaines telling Sanford, "why didn't you stop," and Sanford repeating "I'm sorry." Rep. of Proc. (RP) (Gloria Bell) at 147. Defense counsel did not object to this testimony.

The prosecutor next asked Officer Macomber about his interview of Sanford at the hospital. During this line of questioning, the prosecutor played the clip from Exhibit 28 showing Officer Macomber's initial interview of Sanford at the hospital.

Officer Macomber explained that after interviewing Sanford at the hospital, he spoke with Gaines. After speaking with Gaines, Officer Macomber returned to Sanford to ask more questions. The prosecutor then played the final clip from exhibit 28, the video of Sanford's second interview. The video began with Officer Macomber reminding Sanford that he had earlier stated he had not seen police lights. Sanford responded, stating "I thought we were just tryna going fast, I try to go fast everyday."

4

Ex. 28 (Sanford Statement 2) at 47 sec. through 52 sec. At that point, Officer Macomber terminated the interview. Before the recording ends, Sanford asked for and received permission from Officer Macomber to apologize to Gaines.

The prosecutor next called a custodian of record for the department of licensing to testify about Sanford's "suspended/revoked" license status at the time of the collision. During the employee's testimony, the prosecutor sought to admit exhibit 27, a copy of Sanford's driving record.

The prosecutor called another witness who testified he was driving on Highway 603 before the collision and observed a patrol car behind him with its emergency lights activated. He pulled over and observed the motorcycles "racing" past him and through a red stoplight. He did not see the collision, but heard it and observed the aftermath.

Sanford testified in his defense. On direct examination, he claimed that he did not know Officer Macomber was behind him. Sanford acknowledged he was speeding, but denied crossing lane lines or engaging in unsafe riding behavior with his legs. He testified that Gaines was his girlfriend, and that she was inexperienced riding motorcycles. He thought the collision occurred because a car hit him from behind. Sanford testified that when he apologized to Gaines at the scene, he was apologizing for the pain the woman he loved was in, not for causing the collision.

On cross-examination, the prosecutor questioned Sanford about his relationship with Gaines. Sanford testified that he and Gaines were engaged, she was pregnant, and

he believed the child was his. The prosecutor then asked whether Sanford was in a relationship with another woman, pointing out a woman seated in the gallery. Defense counsel objected on relevance grounds, but the court overruled the objection. The prosecutor proceeded to question Sanford about his communications with the other woman and her belief that they were in a relationship. Gaines did not testify at trial.

Just prior to the jury beginning deliberations, the prosecutor noticed references to Sanford's prior DUI in Sanford's driving record, exhibit 27. The parties agreed to remove pages two through six from the record because they contained information about Sanford's "violations and ignition interlock requirements." RP (Gloria Bell) at 359. Despite the agreement, the jury received a complete copy of exhibit 27 containing references to the ignition interlock.

The jury ultimately found Sanford guilty on all counts.

Sanford timely appeals.

ANALYSIS

1.  IMPEACHMENT ON A COLLATERAL MATTER

Sanford argues the trial court erred by overruling his objection and allowing the State to introduce testimony about his relationship with a woman in the gallery. He argues the evidence was irrelevant and prejudicial, and that the error in admitting it was not harmless. The State contends its cross-examination of Sanford regarding whether he had another girlfriend was proper impeachment because Sanford opened the door to the

subject. We agree with Sanford and conclude the trial court abused its discretion in overruling defense counsel's objection and permitting Sanford's testimony on this subject.

We review trial court decisions to admit evidence using an abuse of discretion standard. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). We cannot "find abuse of discretion simply because [we] would have decided the case differently;" rather, "we must be convinced that '*no reasonable person* would take the view adopted by the trial court.'" *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017) (internal quotation marks omitted) (quoting *State v. Perez-Cervantes*, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000)).

Only relevant evidence is admissible. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

Under ER 607, "[t]he credibility of a witness may be attacked by any party." However, it is well established that "a witness cannot be impeached upon matters collateral to the principal issues being tried." *State v. Oswalt*, 62 Wn.2d 118, 120, 381 P.2d 617 (1963). "An issue is collateral if it is not admissible independently of the impeachment purpose." *State v. Fankhouser*, 133 Wn. App. 689, 693, 138 P.3d 140 (2006). Even prior conduct related to credibility may not be admissible unless relevant.

7

*Harbottle v. Braun*, 10 Wn. App. 2d 374, 396, 447 P.3d 654 (2019). "Put another way, a witness may be impeached on only those facts directly admissible as relevant to the trial issue." *Fankhouser*, 133 Wn. App. at 693.

Here, the trial court abused its discretion by overruling Sanford's relevance objection and permitting the prosecutor to impeach Sanford regarding his romantic relationship with the woman in the gallery. The subject of Sanford's romantic relationship with another woman was not relevant to any issue at trial because it did not have any tendency to make a fact of consequence—whether Sanford committed the charged offenses—more or less probable. *See* ER 401. Because the testimony was irrelevant, it was inadmissible. ER 402.

Nor was the impeachment proper under ER 607. Sanford's testimony was not admissible independent of its impeachment purpose, because it concerned a collateral matter. *See Fankhouser*, 133 Wn. App. at 693. "[A] witness cannot be impeached upon matters collateral to the principal issues being tried." *Oswalt*, 62 Wn.2d at 120. Therefore, the trial court abused its discretion by overruling defense counsel's objection and permitting the testimony.

The State's argument that Sanford opened the door to this line of questioning is unpersuasive. "[T]he open door doctrine permits trial courts to admit evidence on a subject normally barred on policy or prejudice grounds, so long as the party who otherwise stands to benefit from exclusion *has increased the subject's relevance* through

8

actions at trial." *State v. Rushworth*, 12 Wn. App. 2d 466, 475, 458 P.3d 1192 (2020)

(emphasis added). Here, Sanford did not place the exclusivity of his romantic

relationships at issue. His testimony that Gaines was his girlfriend and that he loved her

did not render evidence of other romantic relationships relevant to any fact of

consequence in the case. Because Sanford did not increase the relevance of the subject,

the open door doctrine does not apply.

We review the erroneous admission of evidence in violation of an evidentiary rule

using the nonconstitutional harmless error standard. *State v. Gower*, 179 Wn.2d 851,

854, 321 P.3d 1178 (2014). Under this standard, an error is harmless unless there is a

reasonable probability that, but for the error, the outcome of the trial would have been

materially different. *Gower*, 179 Wn.2d at 854. In other words, the "improper admission

of evidence constitutes harmless error if the evidence is cumulative or of only minor

significance in reference to the evidence as a whole." *Hoskins v. Reich*, 142 Wn. App.

557, 570, 174 P.3d 1250 (2008). The State carries the burden of demonstrating

nonconstitutional harmless error. *State v. Barry*, 183 Wn.2d 297, 303, 352 P.3d 161

(2015).

Sanford contends the error in admitting this evidence was not harmless. He

contends the outcome would have been different because this evidence made it look like

Sanford did not care about Gaines to the point that he would fabricate a story implicating

her to save himself. He asserts that his credibility was key to the jury's consideration of the evidence.

Here, the improper impeachment evidence was not significant in reference to the evidence as a whole. The challenged testimony was brief, peripheral to the core issues at trial, and played a limited role in the proceedings. The prosecutor did not emphasize Sanford's romantic relationships during closing argument, nor did the State rely on that evidence to establish any element of the charged offenses. The trial instead focused on Sanford's driving conduct and the circumstances of the collision. All considered, there is not a reasonable probability the outcome of trial would have been materially different without this error.

Although we conclude this error, standing alone, is harmless, the cumulative effect with the additional error below requires a new trial.

2. UNREDACTED DEPARTMENT OF LICENSING RECORD

Sanford contends the jury received and considered prejudicial extrinsic evidence when exhibit 27, containing references to Sanford's ignition interlock requirement, was sent to the jury. He contends that information constituted impermissible propensity evidence directly related to a central issue at trial and that the State cannot show the error was harmless. The State, effectively conceding error, responds that the error was harmless. It asserts the reference to the ignition interlock requirement had no connection to the issues before the jury, was not argued by the prosecutor, and could not have

affected the verdict given the evidence presented. We conclude the error was not harmless.

"[I]t is error to submit evidence to the jury that has not been admitted at trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 705, 286 P.3d 673 (2012); *see also State v. Pete*, 152 Wn.2d 546, 553-55, 98 P.3d 803 (2004). "The 'long-standing rule' is that 'consideration of any material by a jury not properly admitted as evidence vitiates a verdict when there is a reasonable ground to believe that the defendant may have been prejudiced.'" *Id.* (internal quotation marks omitted) (quoting *Pete*, 152 Wn.2d at 555 n.4).

"'"Extrinsic evidence" is "information that is outside *all the evidence* admitted at trial, either orally or by document."'" *Pete*, 152 Wn.2d at 552 (quoting *State v. Balisok*, 123 Wn.2d 114, 118, 866 P.2d 631 (1994)) (quoting *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. 266, 270, 796 P.2d 737 (1990)). Extrinsic "'evidence is improper because it is not subject to objection, cross examination, explanation or rebuttal.'" *Id.* (quoting *Balisok*, 123 Wn.2d at 118).

"'[I]f the jury learns that a defendant previously has been convicted of a crime, the probability of conviction increases dramatically.'" *State v. Hardy*, 133 Wn.2d 701, 710-11, 946 P.2d 1175 (1997) (quoting Alan D. Hornstein, *Between Rock and a Hard Place: The Right to Testify and Impeachment by Prior Conviction*, 42 Vill. L. Rev. 1 (1997)). When "there is no way to know what value the jury placed upon the improperly

11

admitted evidence, a new trial is necessary." *Thomas v. French*, 99 Wn.2d 95, 105, 659 P.2d 1097 (1983).

Errors related to the improper admission of evidence are subject to nonconstitutional harmless error analysis. *See State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012). "A *nonconstitutional* error requires reversal only if there is a reasonable probability that the error materially affected the outcome of the trial." *State v. Kindell*, 181 Wn. App. 844, 853, 326 P.3d 876 (2014). The State carries the burden of demonstrating nonconstitutional harmless error. *Barry*, 183 Wn.2d at 303.

This court recently addressed a similar issue in *State v. Zamora*, No. 40217-7-III (Wash. Ct. App. Oct. 16, 2025) (unpublished) https://www.courts.wa.gov/opinions/pdf/402177_unp.pdf. In *Zamora*, the jury was provided with an unredacted copy of a prior judgment and sentence, despite a prior in limine order directing only a redacted copy to be admitted. This court held that the trial court abused its discretion when it admitted the unredacted judgment and sentence. *Id*. at *1. In addition, the error was prejudicial in part because the unredacted documents contained impermissible propensity evidence. *Id*. at *3.

Here, similar to *Zamora*, the jury received extrinsic evidence of Sanford's prior driving related misconduct. The parties and the court agreed that portions of Sanford's driving record referencing an ignition interlock device requirement should not be

12

provided to the jury. Nevertheless, those references were included in exhibit 27 and were sent to the jury during deliberations. This was error.

On this record, the error was not harmless. The ignition interlock references are impermissible evidence of prior bad acts involving Sanford's driving. ER 404(b). Although the State did not allege impairment, did not argue alcohol involvement, and did not mention the ignition interlock requirements in trial, the references carried an obvious and powerful implication: that Sanford previously engaged in serious or dangerous driving behavior warranting an ignition interlock requirement, and that he was therefore more likely to have driven recklessly in this case. This is precisely the type of propensity inference ER 404(b) is designed to prevent.

That inference bore directly on a central issue at trial. The vehicular assault charge required the jury to determine whether Sanford drove recklessly. Evidence suggesting a prior history of driving offenses went to the heart of the jury's assessment of Sanford's conduct in this case. Under these circumstances, there is at least a reasonable probability that the extrinsic evidence influenced the jury's verdict.

Moreover, we are not persuaded by the State's argument that "[t]here is no doubt that the reference to ignition interlock . . . had nothing to do with the jury's verdict." Resp't's Br. at 14. When "there is no way to know what value the jury placed upon the improperly admitted evidence, a new trial is necessary." *Thomas*, 99 Wn.2d at 105.

3. CUMULATIVE ERROR

Sanford contends the cumulative effect of the above described errors deprived him

of his constitutional right to a fair trial. The State did not respond to this argument. We

agree that even if the two errors noted above would be harmless when considered

individually, the cumulative effect of these errors requires reversal.

"'The cumulative error doctrine applies where a combination of trial errors denies

the accused of a fair trial, even where any one of the errors, taken individually, would be

harmless.'" *State v. Azevedo*, 31 Wn. App. 2d 70, 85, 547 P.3d 287 (2024) (quoting *In re*

*Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014)). Reversal is

required where "the totality of the circumstances . . . show[ ] that the accumulation of

errors substantially prejudiced the defendant," denying him a fair trial. *Id*.

Here, the record reflects two errors during trial: impeachment on a collateral

matter and the jury's exposure to unadmitted propensity evidence. Under the totality of

circumstances, the cumulative impact of the errors resulted in substantial prejudice to

Sanford, denying him his right to a fair trial. Reversal is therefore required.

4. SUFFICIENCY OF EVIDENCE

Sanford argues that the State failed to present sufficient evidence of the proximate

cause element of vehicular assault. The State responds that the evidence was sufficient to

prove proximate cause. Although we have already concluded that reversal is required,

we must address sufficiency of the evidence because the remedy for this error is reversal

14

with instructions to dismiss with prejudice. *State v. Koch*, No. 58449-2-II, slip op. (unpublished portion) at 24 (Wash. Ct. App. Apr. 22, 2025) https://www.courts.wa.gov /opinions/pdf/D2%2058449-2-II%20Published%20Opinion.pdf. Here, we agree with the State that the evidence was sufficient.

"The sufficiency of the evidence is a question of constitutional law that we review de novo." *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). This court's review "is highly deferential to the jury's decision." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

Due process mandates that the State must prove every element of a crime beyond a reasonable doubt to secure a conviction. *State v. Aver*, 109 Wn.2d 303, 310, 745 P.2d 479 (1987); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. When reviewing a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id*. Additionally, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id*. "We defer to the jury 'on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.'" *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014).

15

Under RCW 46.61.522(1)(a), "[a] person is guilty of vehicular assault if [they] operate[ ] or drive[ ] any vehicle (a) [i]n a reckless manner and cause[ ] substantial bodily harm to another." "[A] defendant's conduct is a 'proximate cause' of harm to another if, in direct sequence, unbroken by any new independent cause, it produces the harm, and without it the harm would not have happened." *State v. Meekins*, 125 Wn. App. 390, 396, 105 P.3d 420 (2005).

Here, the to-convict instruction required the State to prove that Sanford's operation or driving of the vehicle "proximately caused substantial bodily harm to another person." Clerk's Papers (CP) at 18. The jury was instructed that "'proximate cause' means a cause which, in a direct sequence produces the substantial bodily harm, and without which the substantial bodily harm would not have happened." CP at 21.

Viewing the evidence and reasonable inferences from it in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Sanford's driving was the proximate cause of Gaines' injuries.

Officer Macomber testified that he observed the collision between the two motorcycles, and that it occurred when the blue motorcycle "collided right into the red [motorcycle]." RP (Gloria Bell) at 130. Officer Macomber also testified that he identified Sanford as the driver of the blue motorcycle, which Sanford confirmed in his testimony. The jury was also presented with video evidence from the scene showing Sanford apologizing to Gaines, and Gaines responding, "[f]ucking pay attention next

time, what the fuck is wrong with you," followed by Sanford apologizing and stating, "that was really dumb." Ex. 28 (Macomber body cam crash scene) at 1 min., 56 sec. through 2 min., 7 sec. The jury was also shown video of Sanford asking for permission to apologize to Gaines at the hospital. Ex. 28 (Sanford Statement 2) at 1 min., 20 sec. through 1 min., 36 sec.

Given Officer Macomber's testimony, taken as true, coupled with reasonable inferences from Sanford and Gaines' statements at the scene and hospital, we are convinced any rational jury could find the proximate cause element of vehicular assault beyond a reasonable doubt.

Sanford argues that there was no testimony describing reckless conduct at the precise moment of impact. But proximate cause does not demand proof of a specific reckless maneuver at the instant of collision, but rather a causal connection between the defendant's driving and the resulting harm. *See Meekins*, 125 Wn. App. at 396.

The jury was entitled to credit Officer Macomber's testimony that Sanford's motorcycle collided with Gaines' motorcycle. The jury was also free to reject Sanford's alternative explanation that a car hit him from behind. "We defer to the jury 'on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.'" *Andy*, 182 Wn.2d at 303.

The State provided sufficient evidence to prove the proximate cause element of vehicular assault. Nevertheless, based on the cumulative effect of multiple trial errors, we reverse Sanford's convictions and remand for a new trial.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Hill, J.

_____
Cooney, J.